KERRVILLE BUS CO., Inc. v. CONTINEN-
TAL BUS SYSTEM et al.

No. 9682.

Court of Civil Appeals of Texas.    Austin.
Oct. 29, 1947.

Rehearing Denied Nov. 28, 1947.

J. W. Wheeler, of Austin, for appellant.

R. E. Kidwell, of Dallas, for appellee Continental Bus System.

Price Daniel, Atty. Gen., of Texas, and Chas. D. Mathews and James D. Smullen, Asst. Attys. Gen., for appellee Railroad Commission of Texas.

HUGHES, Justice.

The Railroad Commission of Texas, on December 18, 1945, granted a certificate of convenience and necessity to Bowen Motor Coaches, now known as Continental Bus System, authorizing the operation of an intrastate motor bus service from Victoria to Bastrop via Yoakum, Shiner, Moulton, Flatonia and Smithville, over State Highway 295 from Victoria to its junction with State Highway 111, thence over State Highway 111 to Yoakum, thence over State Highway 95 to Smithville, and thence over State Highway 71 to Bastrop, with an alternate route over a paved county road from its junction with State Highway 295, near the DeWitt County line to Yoakum and from Cuero to Yoakum over State Highway 29 and U. S. Highway 77. The certificate authorized service to all intermediate points along the route, except between Smithville and Bastrop, and directed a coordination of such services with services authorized by existing permits held by Continental.

When Continental's original application for such permit was filed the Kerrville Bus Company, appellant, held permits authorizing, and it was actually rendering, bus service from Victoria to Yoakum via Cuero, the route from Cuero to Yoakum and from Bastrop to Smithville being identical with the Continental route. Subsequent to the Continental's application appellant applied for and was granted permits to render bus service between Gonzales and Yoakum via Shiner, and between Smithville and Shiner, over Highway 95.

Being dissatisfied with the order of the Railroad Commission granting the Continental permit, appellant filed suit in the court below for its cancellation. Trial was without a jury and judgment was rendered that appellant take nothing by its suit. Findings of fact and conclusions of law were made and filed by the trial judge.

The record is quite voluminous, and we will only refer to so much of the record as is necessary to pass upon the questions raised by appellant in its brief.

The judgment is assailed on the ground that Continental's permit authorizes motor bus service over a non-existent highway.

The trial court found that: "At the time of consideration of the subject application by the Commission there was a short gap in construction of State Highway 295, such gap being the portion of State Highway 295 between the end of the pavement near the Victoria County-DeWitt County line and State Highway 111, a distance of approximately 6 or 8 miles, which was a highway designated by the State Highway Department as a portion of State Highway 295, for which portion the right of way had been secured but on which the highway had not yet been constructed and the only connection between the end of the pavement on State Highway 295 and State Highway 111 at this place at that time was a winding dirt road not wholly over the right of way and not under maintenance of the State Highway Department."

Appellant cites Railroad Commission et al. v. Southwestern Greyhound Lines, 138 Tex. 124, 157 S.W.2d 354; Id., Tex.Civ. App., 147 S.W.2d 318, as supporting its view. The permit cancelled in that case was based upon a situation entirely dissimilar from that here presented. A brief quotation from the opinion of the Supreme Court will demonstrate this: "It is undisputed that at the time the certificate was granted there was no highway in existence, and none under construction, over at least a substantial part of the route over which the bus line was to be operated under the certificate issued by the Railroad Commission. In fact, in November, 1936, at the time the application for the certificate was filed, the route of a part of the proposed road had not been designated, and its whereabouts was so uncertain that the applicant could not state what towns it would pass through. As late as October, 1938, at the time the certificate was granted, the right of way for the highway over a part of the route, particularly in Harris County

between Port Arthur and Houston, had not been acquired, and it was not then known through what points the highway would pass in said county. This same condition seemed to exist at the time of the trial of this case in March, 1940. No plans had been drawn for the construction of the road, and it was entirely problematical as to when, if ever, the road would be constructed. It was equally uncertain as to the kind of material and type of construction that would be employed in building the road, if one should ever be built."

In this case a substantial portion of the proposed route was over paved highways. The total mileage involved, exclusive of an alternate route between Yoakum and the DeWitt County line, was 123 miles. Only 8 miles was unpaved, and for this the State had procured the right of way. Along this unpaved portion there were no towns or communities. The glaring uncertainties which called for the ruling in the Greyhound case are not here at all. The route involved is about 94% complete and in use. This small per cent of unfinished road should not be good cause for striking down an order of the Railroad Commission, purportedly made in the public interest, at the behest of a competitive adversary.

Appellant questions the judgment on the ground that Continental's permit covered a road not described in the application nor in the notice of hearing. This relates to the alternate route over a paved county road from Yoakum to its intersection with State Highway 295 at or near the DeWitt County line, a distance of about 12 miles. This alternate route was not specifically described in the original application nor in the notice of hearing. Upon the hearing before the examiner for the Railroad Commission Continental requested and was granted leave to amend its application so as to include this alternate route. Appellant did not object to this amendment until it filed a motion for rehearing with the Commission.

Appellant appeared and actively participated in all of the proceedings before the Commission.

We are referred to such cases as State v. Blue Diamond Oil Corporation, Tex.

Civ.App., 76 S.W.2d 852; Rabbit Creek Oil Co. v. Shell Petroleum Corporation, Tex.Civ.App., 66 S.W.2d 737; Smith v. Wald Transfer & Storage Co., Tex.Civ. App., 97 S.W.2d 991; Greer v. Railroad Commission, Tex.Civ.App., 117 S.W.2d 142 (Writ Dis.), and Railroad Commission v. Red Arrow Freight Lines, Tex.Civ. 167 S.W.2d 249 (Writ Ref.W.M.) all by this court, holding that where a statute, as here, requires notice and hearing, such prerequisite is jurisdictional, and its omission renders the order void. We reaffirm such holdings, but differ with appellant as to their present application. There was both notice of and hearing on Continental's application. The notice issued by the Commission and to which appellant responded named the towns between which authority to render bus service was sought. The amendment made at the hearing and in appellant's presence and without objection did not add any towns or highways served or operated over by appellant

In Railroad Commission v. Southwestern Greyhound Lines, Tex.Civ.App., 92 S.W.2d 296, reversed on other grounds, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1255, this court held as without merit a similar contention, saying: "Obviously no one was misled, and no doubt could have existed at the hearings before the commission as to the route and roads involved. Under these circumstances, we think the irregularity complained of by appellee, if such it was, is immaterial and harmless." 92 S.W.2d 304.

It is well settled that in proceedings of this nature before the Railroad Commission rules of pleading and practice are not as strict as in civil cases. G. & H. Motor Freight Lines, Inc., v. Railroad Commission, Tex.Civ.App., Austin, 140 S.W.2d 946 (Writ Dis.). The right of amendment in civil cases is "freely" allowed. Rule 66, Texas Rules Civil Procedure. The rule of liberality in proceedings before the Commission would be reversed should we sustain this point. We decline to do so.

■ Continental's application was filed with the Commission on Saturday, November 3, 1945. The Commission at the call of its docket on Tuesday, November 6, 1945, set this application for hearing on November 21, 1945. Rule 54–B of the Commission provides that a motor transportation application filed after. 12 o'clock noon on Thursday preceding the first Tuesday of a certain month will not be called for setting on the first Tuesday following the filing of the application, but will go over to the first Tuesday of the succeeding month, unless, upon sworn motion, for cause shown, the Commission shall otherwise order. Continental. filed an unsworn motion for a departure from the general rule, which motion was granted and the hearing set for November 21, 1945. This setting was protested by appellant on November 13, 1945, and again on November 21, 1945, on grounds other than that the motion was not sworn to. Appellant participated fully in the hearing and, in our opinion, waived the defect of which complaint is made.

■ Continental's application was heard by an examiner of the Commission. The proceedings were taken down by a reporter appointed by the Commission. Before a transcript of the testimony had been prepared by the reporter and filed with the Commission, Continental's application was approved. Appellant assigns this as error under the authority of Sec. 12, Art. 911a, Vernon's Ann.Civ.St., which provides that in hearings, such as here involved, held by an authorized representative of the Commission, a majority of the Commission may "upon the record" render judgment, etc.

While the record was not before the Commission when it approved Continental's application, the examiner who had conducted the hearing met with the Commission, explained the application, what the applicant proposed to do, and gave a general summary of the "public" testimony as he recalled it.

It further appears that appellant filed a motion for rehearing with the Commission and requested permission to orally argue the motion, which request was granted, and oral argument was made by appellant before the Commission at which time transcript of the testimony had been prepared, filed with the Commission and was available to all parties. The Commission having the "record" before it when appellant's

motion for rehearing was overruled, at which time the order of the Commission became final, we hold that a substantial compliance with that portion of the statute quoted above has been shown.

■ Appellant's remaining points are grouped in its brief and presented by one statement and argument. Generally, these points attack the order of the Commission granting Continental's permit and the judgment sustaining such permit on these grounds: (a) fact findings of the Commission are contrary to the undisputed facts before the Commission and the trial court; (b) failure of the Commission to make certain findings; (c) since appellant was granted authority to render motor bus service from Smithville to Shiner, on January 7, 1946, Continental's permit should not be sustained, particularly since there was insufficient business to justify operation of competing busses between the same points; (d) failure of the trial court to make additional findings of fact.

The proceeding before the Commission was under Art. 911a, Vernon's Ann.Civ. St., which does not require the Commission to set out in its order the facts upon which the order is based. Texas Motor Coaches v. Railroad Commission, Tex.Civ. App., Austin, 59 S.W.2d 923, affirmed 123 Tex. 517, 73 S.W.2d 511.

■ If, however, the Commission does make findings in the order which are without substantial evidence to support them, the order could not be upheld on presumed findings, under principles announced in Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73.

■ The findings contained in the order of the Commission are:

"The Commission finds that this is an application for a motor bus certificate as detailed in the caption hereof.

"The Commission further finds that the applicant is financially able and capable of performing the service as proposed in this application, and that the equipment to be used by applicant meets the requirements of the law and the rules and regulations of this Commission with respect to safety devices, dimensions, etc., and that the high-

ways over which applicant proposes to operate are of such type of construction and in such state of repair as to permit the proposed operation without undue interference with the use of such highways by the general public for ordinary highway purposes.

"The Commission further finds that there is no motor bus service at this time between Smithville and Shiner, and that the territory between such towns is heavily populated and needs motor bus service. Public witnesses were introduced from such points who testified as to the needs for such transportation. No motor bus company now operates over State Highway 295 and 111 between Victoria and Yoakum, and the Commission finds that service over this route is desired by the traveling public. Likewise, additional service is needed and required between Yoakum and Cuero over U. S. Highway 77. Therefore, the Commission is of the opinion that public convenience and necessity demand and require that this application be granted as hereinafter set out."

These findings support the order made by the Commission and we shall determine if they are based upon substantial evidence.

The trial court made elaborate findings of fact consistent with the findings made by the Commission. A summary of the evidence upon which the trial court based its controlling findings shows:

In November and December, 1945, the population of Yoakum was 6,000 and Cuero 7,000. There was a substantial movement of people between these two towns located only a short distance apart in the same county, and a need for bus service from Yoakum north to points between Shiner and Smithville. The community around Yoakum needed the type of bus service proposed, and this was especially true in view of the fact that people in the community needed a public transportation service to Flatonia in order to catch trains. Likewise, there was a need for the proposed service from Moulton north to Temple, because under existing conditions it was necessary to take people by private means to Bastrop to catch the bus, and the same was true with respect to people com-

ing to Moulton from the north. People visiting in Shiner from Flatonia, or arriving in Flatonia by train destined for Shiner, had no public transportation system available to them between Flatonia and Shiner, and private conveyances had to be used. Passengers originating in such points as Wichita Falls had no direct single like service available to them from Wichita Falls to Shiner. The Secretary of the Chamber of Commerce in Cuero had numerous inquiries about available bus service from Cuero to Taylor, Bartlett and Temple, and there was no direct service available. There was a need for such service from the viewpoint of the public. There was a need for bus service out of Cuero north to Flatonia and Smithville to enable people in Cuero to catch the train at Flatonia and Smithville. On the alternate route between Yoakum, and the intersection of the alternate route with State Highway 295 there was a community by the name of Terryville, together with a rather large rural population, which had no bus service available to them. All along the road between Victoria and Yoakum (State Highway 295 and the paved county road designated as an alternate route) there were small crossroad stores, and farmers residing back from the highway, who traded in Victoria and Yoakum. These people had no bus service available to either Yoakum or Victoria.

The operating manager for appellant testified that from an investigation conducted by him there was a need for a service out of Shiner to Yoakum to enable people working at the tannery in Yoakum to get to work by 8 a. m., and it was not rendering such service. It was further admitted that no service was being provided in the reverse direction around 5:30 p. m. to enable these people to return home.

Appellant offered no direct service to points north of Austin, Bastrop and Bryan.

The county road authorized to be used by Continental as an alternate route was a paved, asphalt road, approximately 14 feet wide, and a crown of 22 feet. There was only one bridge on this road, in good repair, and of the same design, type and construction as numerous bridges in East Tex-

as over which busses of the same type are operated. No difficulty has ever been encountered in actually operating busses over the particular bridge.

It is common knowledge that the people of our time are never ceasing in their demand for improved transportation facilities. Urban residents complain if city busses do not pass their homes every few minutes. In view of this well known public attitude, it is somewhat surprising to learn that populous localities such as Smithville and Shiner were without direct bus service, although only about 68 miles apart. Subsequent to Continental's application, appellant applied for and was granted a permit to operate between these two towns. To a lessor degree, but convincing, are the facts showing the inadequacy of motor bus service between the other points covered by the Continental permit.

The general effect of Continental's permit will be to provide bus service from Victoria on the south to Bastrop in a northerly direction which will connect with existing routes of Continental so as to form through service between Temple and Taylor on the north and Corpus Christi on the south. This service when coordinated with Continental's other routes in North and Central Texas and on the Gulf Coast will result in vastly improved service. The same may be said of the permits granted appellant as to its general east-west operations from Houston to West Texas via Austin.

Important, too, is the establishment of bus service between points where none had heretofore existed and better service between points where the present service was inadequate.

In our opinion there was substantial evidence to support the order of the Commission.

Appellant's concern centers not so much on the lack of need of additional bus service over the routes involved but the manner in which the Commission has acted and in not permitting appellant to perform all of the additional services required without competition.

■ Complaint is made that the Commission did not specifically find that there was need for additional service between Yoakum and Shiner, etc. The Commission did find that public convenience and necessity demanded and required Continental's application be granted. Section 3 of Art. 911a, Vernon's Ann.Civ.St., provides that inadequacy of motor bus service "shall be considered as creating a condition wherein the public convenience and necessity require" additional service. In view of this statute we construe the finding of the Commission so as to include the matter claimed by appellant to have been omitted.

■ Appellant also contends that since it was capable of rendering the additional service required the Commission was not authorized to grant Continental's permit. It relies upon Sec. 6, Art. 911a, Vernon's Ann.Civ.St., which provides that the Commission shall determine the "service rendered and capable of being rendered" by existing transportation facilities and upon Sec. 7 of the same Article which provides that if it appears that the "service rendered or capable of being rendered by existing transportation facilities" is reasonably adequate, the application "may be denied."

In Texas Motor Coaches v. Railroad Commission, Tex.Civ.App., 41 S.W.2d 1074, 1078, this court said: "We do not interpret appellant's pleadings as asserting that it was entitled to a monopoly of motor bus transportation between Dallas and Fort Worth. Clearly it was not. Its permit was not exclusive, nor could the Railroad Commission grant it such. Nor was it entitled to be protected against competition, if the public convenience and necessity authorized the granting of such permit to a competing company over the same or a parallel route between said cities." We followed this decision in Southland Greyhound Lines v. Railroad Commission, Tex.Civ.App., 73 S.W.2d 604.

Both of these decisions were cited with approval by the Supreme Court in Railroad Commission v. Metro Bus Lines, Inc., 144 Tex. 420, 191 S.W.2d 10, 17, the court saying: "The denial of an application does for a time protect the existing carrier from competition or additional competition, but a permit may be granted to a competitor to operate buses between the same termini or over the same or parallel routes whenever the public convenience and necessity warrant."

In Miller v. Tarry, Tex.Civ.App., 191 S.W.2d 501, 511 (Writ Ref.), Chief Justice McClendon, for this court, in sustaining a motor carrier permit where three applications were involved, overruled a contention very similar to the one here made, in this language: "* * * The Commission had a wide discretion in passing upon these applications and was fully authorized, under the showing of need to grant either or all of them, and upon such terms as it deemed appropriate. The fact that one of the applicants may have regarded its proffered service as all sufficient would not justify striking down the competition service granted at the same time to either of the other two."

It is plain, under these decisions, that a motor carrier is not entitled to a monopoly and that the statutes under consideration should not be so construed as to create one. Sections 6 and 7 of Article 911a should be read and construed with Sec. 3 of the same Article, which provides that inadequacy of service alone shall create a condition of public convenience and necessity requiring the issuance of a certificate conditioned only upon the opinion of the Commission that the public welfare will be promoted. Considering the mandatory nature of Sec. 3, Art. 911a, the procedural nature of Sec. 6, and the permissive nature of Sec. 7, we are of the opinion that Sec. 3 prescribes the controlling test to be applied by the Commission in granting permits or certificates of the character here involved.

■ Not being entitled to a monopoly, appellant cannot rightly complain that competition will cause it to operate at a loss. "* * * The commission should, and is so directed by the statute, take into consideration the effect that granting competitive service between the same termini would have upon the continued ability of existing motor bus carriers to render and continue an adequate service, commen-

surate with public convenience and needs; and should so act as to protect the public interest. If public convenience and need outweigh, as the trial court and the commission found in this case that it did, the private interests of those already in the field, the latter became subservient to the former, and must abide the result, even though it involve financial loss." Texas Motor Coaches v. Railroad Commission, Tex.Civ.App., Austin, 59 S.W.2d 923, 926, affirmed 123 Tex. 517, 73 S.W.2d 511.

Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.