**R. A. BENSON, Savings and Loan Commissioner of Texas, et al., Petitioners,**

**v.**

**SAN ANTONIO SAVINGS ASSOCIATION, Respondent.**

No. A–9548.

Supreme Court of Texas.

Nov. 12, 1963.

Rehearing Denied Feb. 5, 1964.

Waggoner Carr, Atty. Gen., Dudley Mc-Calla, Asst. Atty. Gen., Austin, Kampmann & Kampmann, San Antonio, for R. A. Benson and others.

Graves, Dougherty, Gee & Hearon, Austin, for San Antonio Savings Assn.

CULVER, Justice.

The San Antonio Savings Association applied to the Savings and Loan Commissioner of Texas for permission to open and operate a branch office in the City of San Antonio in addition to its ten existing branches already in operation. Three other savings and loan associations with home offices in the City intervened and offered evidence in opposition. Upon the conclusion of the hearing the Commissioner refused the application for the following stated reasons:

1. The public convenience and advantage will not be promoted by allowing such pro-

posed additional office to engage in business taking into consideration that the proposed location of said additional office is only 2.1 miles from applicant's Service Center #7, (branch office) 2716 Fredericksburg Road;

2. The proposed operation will unduly injure the Alamo Savings and Loan Association presently 3 miles distant and only 1.7 miles from their future location (land purchased for erection of) office building at the corner of Fredericksburg Road and Vance Jackson Road;

3. The proposed area is being adequately served.

The district court held that the order of the Commissioner denying the application was not reasonably supported by substantial evidence, but to the contrary was unreasonable, arbitrary and capricious and decreed that the Association be granted permission to maintain and operate the branch office as applied for.

The Court of Civil Appeals affirmed the judgment of the trial court in so far as it set aside the Commissioner's order. Tex. Civ.App., 365 S.W.2d 388.

The Court of Civil Appeals begins its discussion of the merits of the case by saying that the propriety of the Commissioner's action is to be gauged solely by the reasons assigned by him in denying the application. In other words the Court is saying that the evidence need be reviewed only to determine whether the grounds given by the Commissioner are reasonably supported by substantial evidence. We have just held to the contrary in Gibraltar Savings and Loan Ass'n v. J. M. Falkner, Banking Commissioner et al., Tex., 371 S.W.2d 548.

In Southwestern Savings and Loan Ass'n v. Falkner, 160 Tex. 417, 331 S.W.2d 917, we held that approval of the Commission for the establishment and operation of branch offices by building and loan associations is impliedly required by the provisions of Arts. 881a–2 and 881a–7, otherwise the purpose of the two statutes would be largely nullified. We further decided in that case that the same basic standards which govern the approval or disapproval of the application for an original charter shall apply to applications for the opening of branch offices, since excessively zealous competition may be waged quite as effectively by setting up branch offices as by the granting of charters in the first instance.

Article 881a–2 provides that before a charter will issue to a building and loan association the Banking Commissioner must be satisfied as to the responsibility and general fitness of the parties and that the business will be honestly and efficiently conducted in accordance with the intent and purpose of the act; whether the public convenience and advantage will be promoted thereby; and whether the population in the neighborhood of such place and in the surrounding country affords a reasonable promise of adequate support.

The rules and regulations adopted by the Commissioner relating to his consideration of an application for the establishment of a branch or additional office with which we are here concerned are as follows:

"3.3. No application to establish and maintain an additional office shall be approved unless the Commissioner shall affirmatively find from the evidence before him that:

"(b) The applying association has operated its principal office for at least three (3) years prior to such application successfully, profitably, properly and in accordance with law, and the proposed operation will not impair the applying association's ability to carry on its overall operation;

"(c) The public convenience and advantage in the neighborhood proposed to be served and in the surrounding country will be promoted by allowing the proposed additional office to be established and engage in business at the proposed location, and the volume of business there is such as to indicate

that a profitable operation is probable within a reasonable period of time;

"(d) The proposed operation will not unduly injure any other association operating in the neighborhood of the proposed location or in the surrounding country;

"(f) The proposed location of the additional office is within the same county as the home office of the applying association except in cases where it appears that the proposed additional office is in a neighboring or adjacent county to that in which the home office of the applying association is located and that there is no other association, either State or Federal, adequately serving the neighborhood and surrounding country in which such additional office is to be located."

The proposed location of the branch office applied for is in what is called "Wonderland Shopping City" situated near the edge of the northwest portion of the City on the Fredericksburg Road, U. S. Highway No. 87, one of the principal traffic arteries leading to and from the business district. With a radius of varying from two to three miles, San Antonio Association has roughly semi-circled Wonderland City, enclosing what is described as the trade area of the proposed branch office. The population in that area is said to be some 36,000 people. The area, both as to population and commercial development has enjoyed a rapid growth during the past ten years and in the area so designated there does not exist a savings and loan home office nor a branch.

San Antonio Association urges that such a new and expanding area with 9500 new homes constructed and occupied since 1945, needs and deserves this facility and that the establishment of this branch office would promote the public convenience and advantage. Wonderland City is said to be one of the largest and most important suburban shopping centers in the State. There were about 40 business establishments in

operation at the time of the hearing before the Commissioner. If this were an isolated area, no doubt public convenience and advantage would be promoted by the establishment of a branch office, but that is not the whole story.

The boundary line of this area so drawn on the map does not follow any trade barriers, either natural or artificial, but crosses lots, blocks, streets, railroad tracks and other terrain features indiscriminately. If the line were protracted as it begins and ends with a radius of three miles from the shopping center, it would include two existing branch offices of San Antonio Association as well as the home office of Alamo. Portions of the area are considerably nearer, and more accessible to two of the Association's existing branches than to the proposed location. One of these two branch offices is located on the Fredericksburg Road approximately two miles from the shopping center, the other on the Bandera Road, State Highway 16, which runs in the southwesterly portion of the area. The Alamo Savings Association now has its home office on the Fredericksburg Road 2.8 miles from the proposed branch office of the San Antonio Association. Its new home office will be located further to the northwest on the Fredericksburg Road only 1.7 miles from the center. Additionally, San Antonio Association has a branch office at the intersection of San Pedro and Hildebrand on U. S. Highway 281 3.6 miles distant from the shopping center. Thus, San Antonio Association has offices located on all three of the main traffic arteries leading through the northwest quadrant of the City. In fact it has now a total of ten branch offices surrounding the business district in every direction and covering most of the principal traffic arteries in and out of the City. There are presently in San Antonio seven associations which, including branches, total 18 savings and loan offices within the City where customers may deposit their funds. All of San Antonio Association's branches are located in the stores of a large grocery chain and it will follow

that plan with the branch it now proposes to install. A sampling of the grocery customers taken at the Association's Fredericksburg Road branch on a Saturday afternoon revealed that 73% had savings accounts and 31% had accounts with San Antonio Association.

All of the savings and loan institutions in the City are active in the area surrounding Wonderland City. Alamo has 650 customers in the area; Travis has 150 mortgage loans and four to six hundred depositors; First Federal has 1200 loans and some eight hundred depositors. The extent of the business done in that section at the other three savings institutions is not shown. Officers of all three of these named concerns testified that in their opinion the area is adequately served.

It would be convenient to customers and probably produce more business if branch offices were established in every corner grocery and drug store in the City, but obviously that practice would not be economical nor would it promote public advantage. On the contrary it would serve to create "excessively zealous" competition to the detriment of the public and to the savings and loan industry at large. It must be admitted on the other hand, that the establishment of some branch offices will be in the public interest. So the matter of drawing the line of demarcation, while nebulous, must lie, to a great extent, in the discretion of the Commissioner.

 The Association also objects to the finding of the Commissioner that the area is adequately served and contends that this finding is immaterial. It maintains that the matter of adequate service is related solely to paragraph (f) of the Commissioner's Rule 3.3 which is to be raised only where the proposed location is not within the same county as the home office of the applying association, and, secondly, that the question as to whether the area is adequately served is not a determining factor. Regardless of the merit of these objections we believe that phase is one to be considered in decid-

ing whether public convenience and advantage will be promoted by the establishment of an additional branch office and, though not in itself decisive, would have some bearing on that issue. Ordinarily we would say that public convenience and advantage would not be promoted by the addition of another branch office if the area was already being adequately served, since that would tend to render the service more than adequate.

 The Commissioner's Rule 3.3 quoted above expressly provides that an application to establish a branch office shall not be granted unless, from the evidence, the Commissioner makes four affirmative findings. It follows that the Commissioner's order denying the application must be upheld unless we can say from the evidence that his refusal to make any one of the required findings was arbitrary or capricious. That problem is to be tested by the substantial evidence rule. As that rule operates in the fact situation before us, the refusal of the Commissioner to make a particular affirmative finding cannot be arbitrary or capricious unless the evidence adduced on the trial supporting the required affirmative finding is so conclusive that a negative finding would not be reasonably supported by substantial evidence. Since we are of the opinion that the evidence is not so conclusive, we hold that the Commissioner's finding that public convenience and advantage will not be promoted by allowing the proposed additional office is reasonably supported by substantial evidence. It will therefore be unnecessary to discuss and pass upon the propriety of the other findings.

The San Antonio Association maintains that even if the trial court erred in setting aside the Commissioner's order, nevertheless the cause must be remanded for a new trial for the reason that the Commissioner and the trial court denied the Association access to an investigative report made to the Commissioner at his direction in connection with this application in that

it deprived the Association of due process of law in violation of the Constitutions of the United States and the State of Texas.

At the hearing before the Commissioner the Association did not request that it be allowed to examine this report, but on the trial before the court it was stipulated that the contents of the report or parts thereof were considered by the Commissioner in passing upon respondent's application. It was further stipulated that such reports, by reason of the provisions of the statutes, were held to be secret and confidential and not to be revealed to the applying Association and that had request been made for the contents of the report the request would have been refused. On the trial the Association's motion that the report be produced for examination was overruled by the court in reliance on Falkner v. Gibraltar Savings Ass'n, Tex.Civ.App., 348 S.W.2d 467, n. r. e., and Gibraltar v. Savings Ass'n., Tex.Civ.App., 348 S.W.2d 472, n. r. e. Both of these cases held that the investigation reports are confidential and not for public inspection and the Commissioner could not be compelled to divulge the same. This ruling was based upon the construction of Art. 881a–2 of the Civil Statutes, and Art. 1136a–9 of the Penal Code.

Article 881a–2, Vernon's Ann.Civ.Stat., requires that the Commissioner shall ascertain the necessary information from the best sources at his command and *by such investigation as he may deem necessary.*

The pertinent provisions of Art. 1136a–9, Penal Code, are as follows:

"The Banking Commissioner and any examiner, inspector, deputy, assistant or clerk, appointed or acting under the provisions of this Act, failing to keep secret any facts or information regarding an association obtained in the course of an examination or by reason of his official position, except when the public duty of such officer required him to report upon or take official action regarding the affairs of the association so examined, * * * shall be removed from his position or office and shall be fined * * *. Reports of examinations made to the Banking Commissioner of Texas shall be regarded as confidential and not for the public record or inspection, except that for good reason same may be made public by the Commissioner, but copies thereof may, upon request of the Association, be furnished to the Federal Home Loan Bank Board and/or to the Federal Home Loan Bank for the purpose of meeting the requirements of the Federal Home Loan Bank Act. * * *"

This article of the Penal Code is a section of a bill enacted by the 42nd Legislature defining and regulating building and loan associations and permitting investment in Federal Loan Agencies. Its manifest purpose is to shield the Association against public disclosure of its private affairs which must open its books and records to the Commissioner or his examiners for the purpose of seeing to it that its affairs are conducted in accordance with law and in the best interest of the investing public. The statute expressly provides that for good reason the information may be made public by the Commissioner and that copies upon request of the Association may be furnished to certain organizations. Certainly the statute does not deny disclosure to the Association itself. We therefore believe and so hold that the statute does not preclude, in the situation before us, the Commissioner from revealing the contents of the investigative report to the Association on demand by it. Further, the statute likewise does not preclude the Association from making public the report if it desires to do so.

█ It follows therefore that there is no statutory restraint which prevents the trial court from directing the production of the report upon the application of the affected association.

All of this, however, does not require a reversal and remand of this case. The investigative report, even if admissible in evidence in the trial court by reason of Art. 3731a, § 1, Vernon's Ann.Civ.Stat., is necessarily hearsay and whether favorable or unfavorable to San Antonio Association, could not serve to show that the Commissioner's rejection of the application was not supported by substantial evidence. From the record we must assume that it was at most merely cumulative of the evidence that was introduced. It is inconceivable that anything in the report reflected upon the integrity of the Association or its officials. It is unquestioned that the Association has operated for more than three years successfully, profitably, properly and in accordance with law. Incidentally, the Attorney General has pointed out some dealings of the Association with the stores in which it operates its branch offices but that custom has long been known to the Commissioner. He has made no complaint on this practice either before or at this hearing. We deem the matter of no materiality.

It should be presumed that the Commissioner initiated the investigation to inquire into the matters that according to his rules must be shown affirmatively before the application could be granted. Therefore this case relates only as to whether public convenience and advantage would be promoted; whether a profitable operation would be conducted within a reasonable period of time, and whether undue injury would result to other neighboring associations. In our opinion the failure of the trial court to compel the production of this report did not violate constitutional procedural due process.

The question for decision in this case is: was the Savings and Loan Commissioner's refusal of respondent's application reasonably supported by substantial evidence? The burden rests on the Association to show that there is no substantial evidence which would reasonably support a negative finding by the Commissioner. In our opinion on the trial in the district court the report made by the Commissioner's investigator would have no bearing upon this issue.

The Association, for the proposition that it has been denied due process, cites the cases of Railroad Commission of Tex. v. Alamo Express, 158 Tex. 68, 308 S.W.2d 843 (1958), and Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093.

In Alamo Express we held that the orders of the Railroad Commission not based on any evidence are arbitrary, invalid and void and in plain violation of the mandatory duty imposed by the statute. In the case here there is no contention that the Commissioner failed to follow any mandatory procedure established either by the statute or by the rules.

In Ohio Bell Telephone the Commission, in fixing intrastate rates, had taken into consideration certain information which the Telephone Company did not have the opportunity to examine or rebut and which was not spread on the record. It was pointed out that the Ohio statute did not provide for a review of the Commissioner's order by a separate or independent suit and that a different question would be presented if such a suit could be maintained with an intermediate suspension of the administrative ruling. While our appeal is not strictly a de novo proceeding, nevertheless the ordinary rules of evidence are followed.

For the foregoing reasons the order of the Commissioner in denying the application of San Antonio Association to open and operate an additional branch office in San Antonio is upheld and the judgments of the trial court and Court of Civil Appeals are reversed and judgment rendered that respondent take nothing.

SMITH, NORVELL, GREENHILL and STEAKLEY, JJ., dissenting.

STEAKLEY, Justice (dissenting).

In Southwestern Savings & Loan Association v. Falkner, 160 Tex. 417, 331 S.W.2d 917, we said that "The statutory standards of public convenience and advantage, and adequate population to assure reasonable support, are sufficient statutory basis for the rules and regulations." This statement referred to the rules and regulations promulgated by the Finance Commission and the Commissioner governing the establishment of branch offices. The majority opinion in Gibraltar Savings Association v. Falkner, 6 Supreme Court Journal 622, Tex., 371 S.W.2d 548, quoted these rules and regulations with the statement that such were promulgated by the Building and Loan Section of the Finance Commission and the Banking Commissioner "acting under its legal powers."

The only findings by the Commissioner in the case at bar adverse to the application of respondent in terms of Rule 3.3 are that "The public convenience and advantage will not be promoted by allowing such additional office" (Rule 3.3(c) ) [1] and that "the proposed operation will unduly injure the Alamo Savings and Loan Association" (Rule 3.3(d)). The additional adverse finding "that the proposed area is being adequately served" is inconsistent with Rule 3.3(f). As I read Rule 3.3(f), the question of adequacy of service arises only when the proposed location of the additional office is not within the same county as the home office of the applying Association.

Consistent with the approach which I advocated in the concurring opinion in Gibraltar Savings Association v. Falkner et al., 6 Supreme Court Journal 622, 625, Tex., 371 S.W.2d 548. I would hold that respondent discharged its burden of establishing that the evidence required an affirmative finding by the Commissioner that the public convenience and advantage will be promoted by the proposed additional office, and that the proposed additional office will not unduly injure the Alamo Savings and Loan Association.

I would also hold that the implied findings of the Commissioner favorable to respondent's application in terms of the other provisions of Rule 3.3 were not shown to be without reasonable support in substantial evidence.

In view of the review of the evidence in the dissenting opinion of Justice Smith, I will pretermit further discussion in this respect. I would affirm the judgments below.

NORVELL, J., joins in this opinion.

SMITH, Justice (dissenting).

I respectfully dissent. The trial court held that the order of the Savings and Loan Commissioner *was not* reasonably supported by substantial evidence on any ground. I have concluded that it was only necessary for the trial court to consider the grounds for denial of the application which were stated in the Commissioner's order. Benson admits that the order of the Commissioner states just three reasons for refusing the Association's application. These three stated grounds for refusal were: (1) want of convenience and advantage; (2) undue injury to Alamo Savings and Loan Association; and (3) adequacy of service of the proposed area. In reality the "adequacy of service" ground cannot under this record be considered a separate ground in view of the admission of the Commissioner that subsection (f) of the Rules (quoted by the Court) applies only to associations seeking a branch outside their home county. The Court of Civil Appeals unlike the trial court, judged the Commissioner's order solely by the grounds stated in the order. I am inclined to agree with the Court of Civil Appeals on the theory that when specific grounds of dissatisfaction are stated, all other grounds must be presumed favorably found, since it must be assumed

[1]. It is noted that Rule 3.3(c) was amended subsequent to the time involved in our opinion in Gibraltar Savings Association v. Falkner.

that the Commissioner made findings on all the statutory grounds, and stated in his order those which he found against the applicant and which were, therefore, reasons for refusal. The statute *requires* the Commissioner to state "the reason for such refusal." The Commissioner has stated his reasons for denial of the application in the order under consideration. The statute does not mean that the Commission can state only a part of his unfavorable findings in the order. Article 881a–3, Vernon's Annotated Civil Statutes says that the Commissioner, " * * * *shall* endorse upon each copy of the articles of incorporation [branch application] the word 'refused', [in case of dissatisfaction], *together with the reason for such refusal* * * *." It seems to me it logically follows that since the order definitely states the reasons for refusal, it is reasonable to presume that the Commissioner found favorably to the Association on issues not recited in the order. This conclusion is sound for another reason. It has been held that an administrative order may not be upheld on appeal on a ground not specified in that order when there is a specific finding of fact by the administrator on another ground recited in the order as the basis for the decision. See Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73 (1939); Kerrville Bus Co. v. Continental Bus System, Tex.Civ.App. (1947), 208 S.W.2d 586, wr. ref. n. r. e.

Since Alamo did not appeal from the trial court's judgment that there was not substantial evidence to support the Commissioner's finding that undue injury would result to Alamo, the only issue properly before the Court of Civil Appeals was that of "public convenience and advantage." It follows that no aspect of either the Rules or of the statute should be considered in support of the Commissioner's order, except those bearing on that basic fact found against the Association by the Commissioner. Express findings have been made by the Commissioner. This is not a case where only general findings have been made

against granting the application. In view of the specific finding on the statutory ground "public convenience and necessity," and the absence of any finding on the issues of "reasonable promise of adequate support" and "fitness of management," and especially in view of the statutory requirement that the Commissioner shall state the reason for his order, I conclude that this court cannot presume all ultimate statutory grounds not found by the Commissioner as though they were express findings against the Association. The Commissioner's order cannot be sustained on reasons which he did not give in the order. Either party may introduce evidence relative to the Commissioner's order, whether or not that evidence was introduced or considered at the administrative hearing, but the question of what evidence may be considered is not concerned with the more basic and different question of what grounds the order may be supported on.

Benson cites the case of Railroad Commission v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967 (1937). That case was decided before the Gulf Land Company case, supra, and was specifically discussed and approved. The Magnolia case simply holds that the administrative agency will not be held to the *legal* reasons or theories it advances in its order in support of a particular ground or action. But the decision in Gulf Land clearly demonstrates that when there is a specific *fact* finding on one statutory issue, the courts will not uphold the order on the basis of some other unfound statutory ground.

For the reasons stated, the Court of Civil Appeals did not err in refusing to consider "as essential to a disposition of this appeal" phases of this case which were not found against the Association by the Commissioner.

Reverting now to the trial court's judgment and its opinion in support thereof, the unusual-written opinion by the Honorable Herman Jones reflects that the trial court carefully considered whether there was

substantial evidence to support the Commissioner's order. The opinion reflects that the Court did not limit the trial to grounds found by the Commissioner, but, instead, covered all grounds. Obviously, the trial judge considered on their merits *all* grounds advanced by Benson (both stated and unstated), but concluded that the order was not supported by substantial evidence on *any* ground. I have reached the same conclusion and hereby incorporate the opinion of the trial court as a part of this dissent. The opinion reads:

"All parties agree that this case must be determined under the substantial evidence rule. While the statement of this rule is simple, its application to the evidence in a particular case presents great difficulty. The cardinal principle involved in the rule is believed to be that substantial evidence exists when, on the trial of the case, the evidence in support of the administrative agency is such as will convince reasonable men, that is, evidence such as a reasonable mind might accept as adequate to support a conclusion. If, on the whole record, the evidence is such that reasonable men might reasonably differ, irrespective of what the Court might think of the wisdom or justice of the administrative decision, such decision must stand, and the Court is prohibited from substituting its judgment for that of the administrative agency. It should be emphasized, however, that the authorities uniformly agree that whether or not substantial evidence exists must be determined by the Court upon a consideration of the whole record.

"In the instant case, it appears to the Court that the more specific evidence presented must be considered against the background of the following undisputed facts: the Southwestern Region of the United States, in population and economic strength, is presently developing at a considerably faster rate than the country as a whole, and the outlook for such development in the future in this region is as bright or brighter than the present; the State of Texas is developing at a faster rate than the South-western Region as a whole; the San Antonio metropolitan area is one of the fastest developing areas within the state; the northwestern quadrant of the City of San Antonio is one of the fastest developing sections in the metropolitan area, particularly with respect to residential growth; and, finally and probaby most important of all, (the proposed branch office is to be located in a shopping village which is far and away the largest in the metropolitan area of San Antonio and one of the largest in the entire nation.)

"Since the Commissioner has denied Plaintiff's application to locate a branch savings and loan office in the above mentioned shopping village notwithstanding the undisputed facts set out, it is believed that the Court is required to examine closely the evidence presented to determine what, if any, peculiar circumstances exist here to condemn the proposed branch, when the overall picture would indicate that if the branch is not justified here there is virtually no place within the state where such a branch could be justified.

"Referring to article 881A–2, which, according to the Supreme Court, vests in the Defendant the authority to grant and deny applications for branch offices, the Legislature directs that the Defendant *shall* approve the application for a branch office if (1) the character, responsibility, and general fitness of the persons to operate the same are such as to command confidence and warrant belief that the business of the proposed branch will be honestly and efficiently conducted in accordance with the intent and purpose of this act, (2) the public convenience and advantage will be promoted by allowing such proposed branch to engage in business, and (3) the population in the neighborhood of such place and in the surrounding country affords a reasonable promise of adequate support for the proposed branch.

"Pursuant to this statute, the Defendant Commissioner has adopted rules and regulations, Chapter 3 of which, dealing with

additional offices, is particularly applicable here. It is assumed that such rules and regulations must find support in the statute and that the action of the Commissioner under review here must find support in such of the rules and regulations as, in turn, are supported by the statute. Chapter 3.3 of the rules and regulations sets out the standards which must be met before the Commissioner will approve application for a branch office. Sub-paragraph (a) of Chapter 3.3 provides that the applying association must have adequate reserves and surplus to warrant the additional place of business. While the Court recognizes that the action of the Commissioner may be supported upon grounds not considered by the Commissioner if substantial evidence at the trial shows the existence of such grounds; nevertheless, the Court thinks it is relevant that the Commissioner made no finding or suggestion of inadequacy of reserves and surplus. Further, the Defendant Commissioner specifically testified that the reserves and surplus were adequate. While the evidence showed that Plaintiff's reserves and surplus dropped from 5.49% to 5.34% between February of 1961 and March of 1962, nevertheless, the reserves and surplus are still well in excess of requirements. In view of all the record, it seems clear that there is no substantial evidence of inadequacy of reserves and surplus. What has been said with reference to reserves and surplus is thought to be applicable to the last clause of Chapter 3.3, sub-paragraph (b), that is, that there is no substantial evidence indicating that the operation of the proposed branch would impair the Plaintiff's ability to carry on its overall operation.

"Turning to sub-paragraph (b) of Chapter 3.3, it is seen that the Commissioner must find that Plaintiff has operated its principal office for at least three years prior to the application successfully, profitably, properly and in accordance with law. It is assumed that this regulation finds support in the statute which requires the Commissioner to find that the character, re-

sponsibility and general fitness of the persons making the application are such as to command confidence and warrant belief that the business of the proposed building and loan association will be honestly and efficiently conducted in accordance with the intent and purpose of this act.

"* * *

"Sub-section (f) appears clearly to apply only if the proposed branch office is located in a county other than the county in which the principal office is located.

"This leaves sub-sections (d) and (c). It is believed that, under all of the record here, only these two sub-sections are genuinely at issue in the case, although considerable testimony was heard which, in one way or another, was presented under other of the sub-sections. With reference to sub-section (d), wherein it is provided that the Commissioner must find that the proposed branch will not unduly injure any other association operating in the neighborhood or in the surrounding country, it should be noted that there is no suggestion of this standard in the statute unless it be that undue injury to an existing association will be detrimental to 'the public convenience and advantage.' The Supreme Court, in Southwestern Savings and Loan Association v. Falkner, 160 Tex. 417, 331 S.W.2d 917, evidently gave the statute such construction, because it is there stated that the purpose of the statute is to protect against the evils of excessively zealous competition by conferring upon the Commissioner control of the number of building and loan associations in a specified area. Further, that case clearly holds that the Commissioner may protect against the evils of excessively zealous competition by controlling the number and location of branch offices.

"In the instant case, the Defendant Commissioner has found that Plaintiff's proposed branch will unduly injure Alamo, the home office of which is three miles from Plaintiff's proposed branch, reciting also that the proposed branch will be only 1.7 miles from the proposed future location

of Alamo's home office. The Court has considerable difficulty in following the reasoning of the Commissioner with respect to Alamo's proposed future location. The evidence here is undisputed that, when the Commissioner acted upon Plaintiff's application, Alamo had no application to move its home office before the Commissioner, and did not file such application until the month following the Commissioner's denial of Plaintiff's application, although indications are that Alamo had purchased its site and that this fact was known to the Commissioner at the time he denied Plaintiff's application. This presents the obvious question as to whether or not the Commissioner is justified in denying Plaintiff's application because he wishes to reserve the area in question for Alamo which, at some subsequent date, may or will file application to move its home office into the questioned area. At any rate, the Court is required to review the facts as they existed on October 26, 1961, the date of the Commissioner's order involved in suit. As of that date, the undisputed evidence is that Alamo had purchased its new site and was planning to move its home office to that site. It does not seem, however, that these facts would give to Alamo's future plans any preference over Plaintiff's application which had actually been filed with the Commissioner some three and a half months before October 26, 1961. The Court does not believe that, under the law, the Commissioner was entitled to protect Alamo's future plans against competition by denying Plaintiff's application which was actually before him. It would be strange indeed if the Commissioner could deny entry by one association into an area because he wished to reserve that area for another association which had plans to enter it.

"However, independently of the views expressed in the last preceding paragraph, it is the opinion of the Court that, in light of all the evidence there is not substantial evidence to support the contention that undue injury will result to Alamo. Alamo chose its present location voluntarily, and such choice was approved by the Defendant Commissioner, notwithstanding the fact that such location was somewhat surrounded by three branch offices of the Plaintiff. Its present office is considerably nearer Plaintiff's branch #7 than to Plaintiff's proposed branch #23. The Court believes that it would be unreasonable to hold that undue injury did not result to Plaintiff's #7 by the location of Alamo's home office close to it, and the evidence shows that branch #7 was not unduly injured by the location of Alamo's home office, and to hold that Alamo's home office operation has not been unduly injured by the proximity of Plaintiff's branch #7, as the facts show, and, at the same time, hold that Plaintiff's #23 would unduly injure Alamo's operations at its present office when Plaintiff's #23 will be much farther removed from Alamo's home office than is Plaintiff's #7. If we seek to protect Alamo's proposed location from undue injury, the case becomes weaker, because Alamo proposes to locate its new home office much nearer to Plaintiff's #7 than is presently the case, and the evidence here indicates that the Commissioner has given reasonable assurance that the move of Alamo will be approved. This is tantamount to finding that Alamo's coming closer to Plaintiff's #7 will neither injure Plaintiff's #7 nor Alamo's home office operation. The Court is unwilling to find that no undue injury is occurring to Alamo at its present location although quite near Plaintiff's #7; that no undue injury is occurring to Plaintiff's #7 because of Alamo's present home office; that no undue injury will occur to Plaintiff's #7 from the relocation of Alamo's home office; and that no undue injury will occur to Alamo from moving its home office still nearer to Plaintiff's #7; and then condemn Plaintiff's #23 because of undue injury to Alamo although #23 is located much farther away, in a new and growing area, and in a virtually self-sufficient shopping city. For evidence to be substantial it must be credible and reasonable, and it appears incredible and unreasonable to the Court that Alamo is not suffering undue injury from

Plaintiff's branch nearby, but that it will suffer undue injury from a branch much more distant from Alamo.

"In his findings, the Defendant Commissioner finds that the proposed area is being adequately served. Since this standard is found neither in the statute nor the Commissioner's regulations, it is assumed that it is another way of saying that public convenience and advantage in the neighborhood proposed to be served and in the surrounding country will not be promoted by the proposed branch. This gets us to subsection (c) of the regulations dealing with public convenience and advantage in the neighborhood and in the surrounding country. The Commissioner finds that public convenience and advantage will not be promoted by the proposed branch because 'the proposed location of said additional office is only 2.1 miles from the applicant's service center #7.' It is assumed that this means that Plaintiff's #7 is meeting the needs and convenience of the same public as would be served by Plaintiff's proposed #23.

"While 2.1 miles is regarded by the Court as a considerable distance in the congested traffic of a modern city and the traversing of such distance is thought to entail substantial inconvenience to the public, we cannot look to distance only and close our eyes to the numerous other factors presented in the area here involved. Obviously, it is impossible precisely to delineate the trade area of Wonderland Shopping City; nevertheless, it must be admitted that the drawing power of such a commercial center will be far-reaching. The center is designed to meet virtually all the shopping requirements of the public. The testimony shows that the retail floor space in the center is comparable to that to be found in a city the size of New Braunfels; that the total cost of this center, including land, was some seven million dollars. Hundreds of thousands of people will be attracted to the center each year. Many of these are presently savings customers of Plaintiff; many more are potential customers. That the needs and convenience of these people will be served by the proposed branch office is self evident. It is assumed that the savings and loan industry is grounded in part at least upon the proposition that saving is a virtue and that the public advantage will be promoted by nurturing and encouraging that virtue. The location of a savings and loan office in this center where it is conveniently accessible to the public and where it is constantly before the eyes of countless thousands inevitably will encourage saving and thereby promote the public advantage. The Court suggests that a commercial center of this magnitude is unbalanced if it shows its patrons only easy and attractive ways of spending while providing them no facility which will afford security against the crises of the future. The needs of the 'grasshoppers' must be met, but the public advantage is heavily dependent upon the 'ants' of our society; and their needs, convenience, and encouragement cannot be ignored.

"It is the opinion of the Court that the record here shows no substantial evidence that public convenience and advantage will not be promoted by the operation of Plaintiff's #23.

"Finally, sub-section (c), Chapter 3, of the regulations provides that the Commissioner shall withhold approval of a branch application in an area unless he finds that 'the volume of business there is such as to indicate that a profitable operation is probable within a reasonable period of time.' The statute directs that the Commissioner shall approve the application if the population in the neighborhood of such place and in the surrounding country affords a reasonable promise of adequate support for the proposed branch.

"What has been said above is believed to be sufficient to establish the probable profitable operation of the proposed branch. However, the present and anticipated growth of the area cannot be overlooked. The evidence shows that the rate of resi-

dential growth in the area is unexcelled elsewhere in the city and that most of this growth is occurring north and northwest of the proposed location, that is, so that the proposed branch office will lie far nearer to the most rapidly developing part of the area than any other existing savings and loan office.

"It is not possible to detail the evidence which the Court believes establishes beyond reasonable doubt that a profitable operation of the proposed branch is probable within a reasonable time, but it seems sufficient to mention: (1) the exceptional number of new residences recently constructed and presently being constructed and, more important, the residential subdivisions being actively developed which indicate an even more rapid growth in the years ahead; (2) the magnitude of the commercial area of which the proposed branch will be a part; (3) the opening in the near future of The University of Texas Medical Branch and the hospital and other developments which are certain to come with the school; and (4) the accessibility of the proposed branch office because of its location on vital traffic arteries of the city.

"In view of all the evidence presented in this case, it is believed that there is no location in the entire city of San Antonio with brighter prospects for the profitable operation of a branch savings and loan office than the one under review here, and it is, therefore, the judgment of the Court that there is no substantial evidence in this record to support a finding that a profitable operation of the branch is not probable within a reasonable time.

"\* \* \*

"Believing that on the whole record the order of the Defendant is not supported by substantial evidence, judgment is for the Plaintiff as prayed for."

I think the trial court's opinion is a sufficient answer to the Court's holding that the Commissioner's order is supported by substantial evidence. If this court upholds the denial of San Antonio Savings Association's application, it will simply mean that *no* savings and loan association could go into the shopping center involved. Certainly there is a justification for a branch office in the center, and it should not be denied merely because it will be located in a grocery store and has been dubbed a "grocery branch." The order of the Commissioner is arbitrary under the whole record in this case. The order, if allowed to stand, could be used as authority for denying any application regardless of whether or not the association applicant had other branches in the area.

*The judgments of the courts below should be affirmed.*

GREENHILL, J., joins in this dissent.