James O. GERST, Savings and Loan Commissioner of Texas, et al., Petitioners,

v.

Christopher GOLDSBURY et al., Respondents.

No. B–857

Supreme Court of Texas.

Nov. 13, 1968.

Rehearing Denied Dec. 11, 1968.

Crawford C. Martin, Atty. Gen., Ray McGregor, Asst. Atty. Gen., Austin, Heath, Davis & McCalla, Dudley D. McCalla, Austin, for petitioners.

Clark, Thomas, Harris, Denius & Winters, Conrad Werkenthin, Austin, Bobbitt, Brite, Bobbitt & Allen, Max D. Allen, and Robert Lee Bobbitt, Jr., San Antonio, for respondents.

STEAKLEY, Justice.

Respondents, Christopher Goldsbury and other organizers and stockholders of Mission Savings and Loan Association, applied in May, 1966, to the Savings and Loan Commissioner of Texas for approval of a charter to operate a new savings and loan association. They proposed to serve a delineated community area of sixty square miles in northeast San Antonio and Bexar County. Approval of the application was protested by seven existing savings and loan associations. After notice and hearing, the Commissioner disapproved the application by order dated September 13, 1966. Respondents filed this suit for judicial review of the order. The trial court set aside the order of disapproval and remanded the application to the Commissioner with instructions to approve the charter application. The Court of Civil Appeals affirmed. 425 S.W.2d 14. The Commissioner and the associations protesting approval of the charter application are Petitioners here. We reverse the judgments below and sustain the order of the Commissioner.

Approval by the Commissioner of an application for a charter to establish a savings and loan association is conditioned by Article 852a, Section 2.08, Vernon's Annotated Texas Civil Statutes, as follows:

"The Commissioner shall not approve any charter application unless he shall have affirmatively found from the data furnished with the application, the evidence adduced at such hearing and his official records that:

"(1) the prerequisites, where applicable, set forth in Sections 2.02, 2.03, 2.04, 2.05, and 2.06 have been complied with and that the Articles of incorporation comply with all other provisions of this Act;

"(2) the character, responsibility and general fitness of the persons named in the Articles of incorporation are such as to command confidence and warrant belief that the business of the proposed association will be honestly and efficiently conducted in accordance with the intent and purpose of this Act and that the proposed association will have qualified fulltime management;

"(3) there is a public need for the proposed association and the volume of

business in the community in which the proposed association will conduct its business is such as to indicate profitable operation;

"(4) the operation of the proposed association will not unduly harm any existing association.

"If the Commissioner so finds, he shall state his findings in writing and issue under his official seal a certificate of incorporation and deliver a copy of the approved Articles of incorporation and bylaws to the incorporators and retain a copy thereof as a permanent file of his office, whereupon the proposed association shall be a corporate body with perpetual existence unless terminated by law and may exercise the powers of a savings and loan association as herein set forth."

The Commissioner in his order of disapproval reviewed the evidence before him and stated his findings to be affirmative as to Subsections (1) and (2) of Section 2.08, but negative as to Subsections (3) and (4). The negative findings were these:

"After a careful review of the entire evidence adduced and presented at the hearing, the Commissioner is of the opinion and so finds, that there is insufficient evidence of a public need for the proposed association, and that the volume of business in the community in which the proposed association would conduct its business is not such as to indicate a profitable operation, and that authorization of this charter application would result in undue harm to an existing association in San Antonio, Texas * * *."

■ The order of disapproval is to be sustained unless these negative findings were not supported by substantial evidence and the evidence so conclusively required affirmative findings that the Commissioner must be held to have acted arbitrarily or capriciously. Where there is substantial evidence which would support either affirmative or negative findings, the order must stand, notwithstanding the Commissioner may have struck a balance with which the court might differ. The problem is not one of a preponderance of the evidence. Were this not so, the court would be in the attitude of impermissibly substituting its judgment for the expertise of the administrative officer in the exercise of his statutory discretion. Gerst v. Oak Cliff Savings & Loan Association, Tex., 432 S.W.2d 702 (1968); Gerst v. Nixon, 411 S.W.2d 350 (Tex.Sup.1966); Gerst v. Cain, 388 S.W.2d 168 (Tex.Sup. 1965); Benson v. San Antonio Savings Association, 374 S.W.2d 423 (Tex.Sup. 1963); Phillips v. Brazosport Savings & Loan Association, 366 S.W.2d 929 (Tex. Sup.1963).

■ In Gerst v. Cain, supra, we referred to the fact that each substantial evidence case must be decided on its own merits and that the facts in one will rarely be the same as in another. We further recognized in Benson v. San Antonio Savings Association, supra, that an order of the Savings and Loan Commissioner disapproving an application must be upheld if his refusal to make any one of the required findings is reasonably supported by substantial evidence. In Gerst v. Nixon, supra, we defined the statutory term "public need" as being a substantial or obvious community need in the light of attendant circumstances, as distinguished from a mere convenience on the one hand and an absolute or indispensable need on the other. The resolution of this question necessarily encompasses all the relevant circumstances disclosed by the evidence presented to the Commissioner, including, but not limited to, the adequacy of the services of the existing institutions whose facilities are available to the residents of the community area proposed to be served. Cf. Benson v. San Antonio Savings Association, 374 S.W.2d 423 (Tex.Sup.1963).

■ The Court of Civil Appeals has reviewed at length the evidence before the Commissioner which, in its view, would have supported 'the affirmative findings

required by the statute for approval of the association. The court concluded from this review that there was no substantial evidence to support the negative findings upon the basis of which the application was disapproved. We may agree there is substantial evidentiary support for the affirmative findings required by the statute for approval of the application; but the crucial findings of the Commissioner were negative and, as previously stated, the problem of the reviewing courts is to determine whether one or more of these findings, as distinguished from contrary findings which might have been made by the Commissioner, have reasonable support in the evidence. If so, the order of disapproval represents a valid exercise of administrative discretion.

At the hearing before the Commissioner, Christopher Goldsbury, a director of the proposed association; Max Allen, an attorney for the applicants; Dr. Gene C. Lynch, an associate professor of finance at Texas Christian University; and Quincy Lee, a stockholder in the proposed association, testified in support of the application and, as mentioned above, the Court of Civil Apeals reviewed the evidence of these witnesses at some length. Dr. Norman Bailey, assistant professor of finance at the University of Texas; Haden Grona, Executive Vice-President of Bexar County Savings and Loan Association; Walter W. McAllister, Jr., President of San Antonio Savings Association; and Mr. Roy E. McGinnis, Executive Vice-President of Alamo Savings and Loan Association, were witnesses in opposition. The evidence favorable and unfavorable to the requisite statutory findings was developed at considerable length by the testimony of these witnesses, including the presentation of voluminous statistical data and charts. We will not exhaustively review this evidence or attempt to categorize that evidence supporting each of the negative findings of the Commissioner. Suffice it to say that we have concluded from our full study of the record that the order of disapproval was reason-ably supported by substantial evidence and that the Commissioner did not act arbitrarily or capriciously.

It was established that existing savings and loan associations maintained savings offices within one, three, and three and one-half miles of the location of the proposed association, and the expert view was expressed that the proposed association would be unable to attract savings from the higher income and savings group in the proposed community area because of the close proximity of the facilities of the existing associations. There was evidence that the proposed savings and loan association would be located in a "convenience goods center" with less potential in drawing savings accounts than other types of community centers; that the center is unkept; that it has four business location vacancies and its traffic volume is below capacity; that a bank formerly located in the center that moved a short distance away could be expected to retain a significant portion of savings accounts from the area; and that two larger and superior shopping centers are located within 1.2 miles and 2.5 miles, one with a savings office of an existing association and another with a commercial bank. Dr. Bailey, the expert witness testifying in opposition to the approval of the charter application, stated "that grave doubt surrounds the likelihood that a new association opening up under the current economy conditions in this location could attract sufficient savings to assure its success."

It was also established that the average growth rate of the city of San Antonio was less in 1965 than in the preceding four years; that the effective buying income per capita in the year 1964 in San Antonio was significantly below the national per capita with only five of the twenty-one standard metropolitan statistical areas in Texas having a lower per capita income than Bexar County in 1965. Additionally, the witnesses in opposition testified at length concerning the "tight money" economic situation exist-

ing at the time that had been of considerable concern to the financial community. It was the expectation of these witnesses that the "tight money" situation would not improve in the foreseeable future, and that the national picture of the savings and loan industry had been considerably less promising during the year 1965 and in the early months of 1966. The problem faced by the savings and loan industry was described as centering around the "tight money" policies maintained by the Federal Reserve Board and included the factors of reduced savings on the part of the public, together with increased competition for savings accounts, particularly from the commercial banks. This testimony was supported by substantial statistical data delineating the economic condition of the nation and the effects of the "tight money" policy. Among other things, it was shown that savings were flowing out of the savings institutions more rapidly than they were replaced; that personal savings declined in 1965 in dollar amount and in percentage of deposits; that the net change for savings and loans on a national basis from January through April of 1966 showed a decline of 58.7 per cent in the flow of savings accounts. It was the further testimony of the witnesses that these financial conditions had been experienced in Texas, and particularly in the San Antonio area; that as a result, competition for savings in San Antonio had intensified between the existing savings and loan associations and the commercial banks with the latter showing gains at the expense of the former. It was further shown that an interest rate squeeze was being experienced by the savings and loan associations because of the activities of the commercial banks, with a resulting profit squeeze reflected in the operations of the associations; and that the growth rate of the associations was decreasing despite an interest rate increase in the first months of 1966. There was also testimony that the theory of operation advanced by the proponents of the proposed association would be unprofitable, with current conditions casting doubt upon the ability of the proposed association to attract a significant volume of savings accounts. The newest existing association in San Antonio is Bexar County Savings and Loan Association. The charter of this association was approved in September of 1965, and it was shown that the association has operated at a loss from its inception. It was denied federal insurance of its accounts, the reason given by the Federal Home Loan Bank Board being that "there is insufficient evidence that a need now exists for the services and facilities of an additional insured association in the general area in which the association will be located; that there is insufficient evidence of its probable usefulness and success without undue injury to existing insured associations in the area; and that insurance of its accounts would involve a risk to the Federal Savings and Loan Insurance Corporation inconsistent with its responsibilities. * * *" It was further shown that Bexar County Savings and Loan Association had not been able to effect any substantial penetration of the San Antonio loan market since its opening in April of 1966, and it was the testimony of the officers of this company that approval of the proposed new association would have an adverse effect on its ability either to obtain federal insurance or to reach profitable and successful operations.

Accordingly, it is our conclusion that the evidence before the Commissioner is not so conclusive on the statutory issue of public need, which we have defined as a substantial or obvious community need in the light of attendant circumstances, as to require the requisite affirmative finding, but is reasonably supportive of the contrary finding of the Commissioner; and that the same conclusion must be reached on the question of the prospective profitability of the proposed new association. The disapproval order of the Commissioner must therefore be upheld as reasonably supported by substantial evidence.

The judgments below are reversed and judgment rendered that Plaintiffs take nothing.