**GONZALES COUNTY SAVINGS AND LOAN ASSOCIATION et al.,**
Appellants,

v.

**W. Sale LEWIS, Savings and Loan Commissioner of Texas et al., Appellees.**

No. 11781.

Court of Civil Appeals of Texas, Austin.

Dec. 2, 1970.

Rehearing Denied Dec. 30, 1970.

James E. Cross, Yoakum, Jacobsen & Long, Joe R. Long, Gary Evatt, Austin, for appellants.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., Philip G. Warner, Asst. Atty. Gen., Heath, Davis & McCalla, Dudley D. McCalla, Austin, for appellees.

HUGHES, Justice.

Gonzales County Savings and Loan Association and Yoakum Federal Savings and Loan Association have appealed from a judgment sustaining the action of W. Sale Lewis, Savings and Loan Commissioner of Texas, in approving the application of South Texas Savings and Loan Association of Victoria, Victoria County, Texas, for authority to establish a branch office in Hallettsville, Lavaca County, Texas.

Appellants' first five points, jointly briefed, are that the Trial Court erred in failing to hold that the order of the Com-

missioner is invalid for the reason that it does not contain a "concise and explicit statement of the underlying facts supporting the findings" [1] in the order that (a) the aggregate amount of the loss reserves, surplus and permanent loan fund of applicant is equal to at least three per cent of its savings liabilities (b) that applicant had had a profitable operation for the three year period next preceding the filing of its application after paying operating expense, making statutory allocations to loss reserves and paying dividends on savings accounts out of its earnings during such period (c) that applicant has had no serious supervisory problems which would affect its ability to properly operate the proposed branch office (d) that the proposed branch office will be supervised by qualified full time management and (e) that the character, responsibility and general fitness of the management of applicant are such as to command confidence and warrant the belief that the business of the proposed branch will be honestly and efficiently conducted in accordance with the intent and purpose of the Savings and Loan Act.

The paragraphs of Sec. 2.4 of the Rules and Regulations for Savings and Loan Associations in effect at the time of this proceeding and Sec. 2.08(2) of Art. 852a upon which these points are based are set out below.[2]

Appellants concede that the findings required by Rule 2.4, which they attack, were made by the Commissioner in his order in the language of the Rule and that the finding required by Sec. 2.08(2) of Art. 852a was made in his order in statutory language modified only to suit the application for a branch office.

We quote from the order of the Commissioner the findings about which complaint is here made:

"The Commissioner further finds the following: that the aggregate amount of the loss reserves, surplus and Permanent Reserve Fund stock of the applying association is equal to at least three per cent (3%) of its savings liabilities; that the applying association has had a profitable operation for the three-year period next preceding the filing of such application after paying operating expense, making

1. Art. 852a, Sec. 11.11(4), Vernon's Tex. Civ.St., Texas Savings and Loan Act, provides:
   "(4) A decision or order adverse to a party who has appeared and participated in a hearing shall be in writing and shall include findings of fact and conclusions of law, separately stated, on all issues material to the decision reached. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings."

2. "Sec. 2.4. The Commissioner shall approve an application for a branch office if he shall have affirmatively found from the data furnished with the application, the evidence adduced at the hearing and his official record that:
   "(a) the aggregate amount of the loss reserves, surplus and Permanent Reserve Fund stock, if any, of the applying association is equal to three per cent (3%) of its savings liability;
   "(b) the applying association has had a profitable operation for the three year

period next preceding the filing of such application after paying operating expense, making statutory allocations to loss reserves and paying dividends on savings accounts out of its earnings during such period;
   "(c) the applying association has had no serious supervisory problems which would affect its ability to properly operate such office;  *  *  *.
   "Sec. 2.08, Art. 852a. The Commissioner shall not approve any charter application unless he shall have affirmatively found from the data furnished with the application, the evidence adduced at such hearing and his official records that:  *  *  *.
   "(2) the character, responsibility and general fitness of the persons named in the Articles of incorporation are such as to command confidence and warrant belief that the business of the proposed association will be honestly and efficiently conducted in accordance with the intent and purpose of this Act and that the proposed association will have qualified full-time management;"

statutory allocations to loss reserves and paying dividends on savings accounts out of its earnings during such period; that the applying association has had no serious supervisory problems which would affect its ability to properly operate such office; * * * that the proposed branch office will be supervised by qualified full-time management; and that the character, responsibility, and general fitness of the management of the branch applicant are such as to command confidence and warrant belief that the business of the proposed branch office will be honestly and efficiently conducted in accordance with the intent and purpose of the Savings and Loan Act."

Following the promulgation of this order, Gonzales filed a motion for rehearing before the Commissioner from which we quote:

"14. The Commissioner erred in approving said application because there is no evidence that the proposed manager of the branch office meets the qualifications prescribed by Rule 1.11 of the Rules and Regulations for Savings and Loan Associations, as amended, for management.

"15. The Commissioner erred in failing to set forth a concise and explicit statement of the underlying facts supporting the findings regarding: (a) ratio of loss reserves, etc. to savings liability; (b) profitability of the applicant's operation for the three-year period next preceding the filing of the application; (c) the absence of supervisory problems affecting the ability of applicant to properly operate the branch office; (d) supervision of the proposed branch office. by qualified full-time management; and (e) the character, responsibility and general fitness of the management of the applying association."

The Commissioner entered an order overruling this motion; from which we quote:

"With regard to Point 14 it is to be noted that the testimony of the managing officer of applicant is sufficient and adequate to establish in this record that the supervising management of the proposed branch office will be full-time and qualified. Point 14 is overruled.

With regard to Point 15 of said motion and application, it is to be noted that no contest was made of these matters by opponents of the subject application, and the testimony of the managing officer of applicant and other witnesses for applicant constitutes adequate evidence of such findings. Counsel for Gonzales County Savings & Loan Association developed the profitability of the applicant association upon cross examination, and by reference to the application and data filed therewith. Point 15 is overruled."

No findings or factual basis for findings as to the matters in issue here were made by the Commissioner except as shown above.

It is obvious that the Commissioner did not, even though the deficiencies in his order were specifically called to his attention in the motion for rehearing, comply with Art. 852a, Sec. 11.11(4), supra. We are merely referred to the record where, it is stated by the Commissioner, we will find evidence to support his conclusions. In our opinion, this is not sufficient.

Appellants cite Miller v. Railroad Commission, 363 S.W.2d 244 (Tex.Sup.1962) and other authorities to support their attack on the order. This case is not directly in point because it construes Art. 911b, Sec. 5a(d), V.T.C.S. relating to the issuance of Certificates of Convenience and Necessity for a "Specialized Motor Carrier or any other common carrier," the statute providing, "The order of the Commission granting said application and the certificate issued thereunder shall be void unless the Commission shall set forth in its order full and complete findings of fact pointing out in detail the inadequacies of the serv-

ices and facilities of the existing carriers, and the public need for the proposed service."

We believe, however, that by analogy and by applying the principles stated in that opinion that the order in suit is invalid.

We quote from the opinion in Miller:

"The statute prescribes, in mandatory language, the scope and extent of the findings of fact which must be made and included in the order. They must be 'full and complete' and they must point out the inadequacies of the services and facilities of the existing carriers and the public need for the proposed service 'in detail.'

■ There is purpose in the statute. One purpose no doubt is to restrain any disposition on the part of the Commission to grant a certificate without a full consideration of the evidence and a serious appraisal of the facts. Another is to inform protestants of the facts found so that they may intelligently prepare and present an appeal to the courts. Still another is to assist the courts in properly exercising their function of reviewing the order. If an order is to accomplish these purposes, it must contain findings of basic facts as distinguished from mere factual, or mixed factual and legal, conclusions. Findings of basic facts cannot be presumed from findings of a conclusional nature. Thompson v. Railroad Commission, 150 Tex. 307, 240 S.W.2d 759, 760. In this respect orders under this statute differ from administrative orders in other fields where there are no statutory requirements for express findings of facts other than the ultimate facts. One of the reasons for striking down the Commission's order in Thompson v. Railroad Commission, 150 Tex. 307, 240 S.W.2d 759, 762, was because of the conclusional nature of certain required findings.
\* \* \*

In the instant order the findings which are said to comply with the statutory requirement are in this sentence: 'The Commission further finds as a fact from the evidence that the existing specialized motor carrier service is inadequate in that the service is not available when needed, and further, that trucks and facilities are not available when needed.' This sentence follows another which recites that the Commission finds as a fact that the type of service proposed is not rendered by regular route common carrier motor carriers or the rail lines.

■ ■ We hold that the findings do not meet the requirements of the statute. The statements that 'service is inadequate in that the service is not available when needed' and 'trucks and facilities are not available when needed' do not provide sufficient findings of basic facts from which the courts can determine if reasonable grounds existed for issuance of the order."

In Thompson v. Railroad Commission, 150 Tex. 307, 240 S.W.2d 759 (1951), the Court in considering an order of the Commission made under the same statute construed in Miller said this of the statute:

"That language [of the statute] is clear and positive. It declares that an order which does not set forth 'full and complete findings of fact' shall be 'void.' There is no mistaking what the language means. The subject with which it deals is not private property rights, but is one of public concern. The right of the Commission to grant a specialized motor carrier certificate is created by this statute for the public good, and it is elementary that that right can be exercised in no other way than by a compliance with its provisions. The statute both creates and limits the Commission's power."

The significance of the word "void" as used in the statute was discussed on motion for rehearing in Thompson. We are not concerned with this problem. The effect

of the holdings in Miller and in Thompson is that the Courts will not sustain an order of an administrative agency which does not comply with pertinent statutes. Whether such orders have some degree of voidness or whether they are merely illegal is of no consequence. We would no more think of enforcing an illegal order than we would one called "void."

Appellees refer to evidence which in their opinion is sufficient to sustain the conclusions made by the Commissioner on the matters here in dispute. We hold that this fact, even if correct, does not relieve the Commissioner of his duty to comply with the statute and with the rules. To hold otherwise would be, in effect, a judicial repeal of the statute and the rules.

It is our opinion that the judgment in this case should be reversed and this case remanded to the Commissioner for further proceedings consistent with this opinion. Gerst v. Jefferson County Savings and Loan Association, 390 S.W.2d 318, Tex. Civ.App., Austin, writ ref. n.r.e. (1965). It is so ordered.

Reversed and remanded.