**Norman T. STRAIN et al., Appellants,**

v.

**W. Sale LEWIS, Savings and Loan Commissioner et al., Appellees.**

**No. 11776.**

Court of Civil Appeals of Texas, Austin.

Jan. 13, 1971.

Rehearing Denied Feb. 3, 1971.

Cofer & Cofer, G. Hume Cofer, Austin, for appellants.

Crawford C. Martin, Atty.Gen., Ray McGregor, Asst.Atty.Gen., Jacobsen &

Long, Joe R. Long, Gary Evatt, Austin, for appellees.

O'QUINN, Justice.

This is an appeal from judgment of the district court sustaining an order of the Savings and Loan Commissioner approving a branch office to be located in Granbury, in Hood County, Texas, and denying a charter for an association also proposed to be established in Granbury.

Stephenville Savings and Loan Association, located in Stephenville, Erath County, filed application for a branch office to be operated in Granbury, Hood County, September 30, 1968. About three months later, on December 20, 1968, eight residents of Hood County, one resident of Somervell County, and one of Tarrant County filed application for a charter to operate a new association, Granbury Savings and Loan Association, in Granbury.

The application of Stephenville Savings and Loan came up for hearing before the Commissioner January 14, 1969, and the hearing was recessed until March 21, 1969. The Granbury application for a charter was heard by the Commissioner February 13, 1969, and the following month, on March 21, the Commissioner heard to its conclusion the Stephenville application for a branch office.

In a consolidated order entered April 22, 1969, the Commissioner approved the Stephenville application for a branch office and denied the Granbury application for a charter.

Appeal to the district court resulted in judgment, entered March 11, 1970, sustaining the order of the Commissioner. The Granbury group, seeking a charter for a new association, has appealed from that judgment and brings eleven points of error.

In the trial court four savings and loan associations intervened and aligned themselves with the Commissioner. The intervenors were Stephenville Savings and Loan Association, Cleburne Savings and Loan Association, Mineral Wells Savings and Loan Association, and Mutual Building and Loan Association of Weatherford, and all are appellees with the Commissioner in this appeal.

We affirm the judgment of the district court approving the order of the Commissioner.

Applicants for the charter, who were petitioners in district court and are appellants before this Court, are identified as Norman T. Strain, Jimmie C. Dixon, Albert Porter, Sam B. Grisson, Jolly Myers, Dr. R. N. Rawls, S. G. Payte, Mrs. Billie Brock, Cecil A. Thomas and Joe L. Nutt, all residents of Hood County, except Myers, a resident of Somervell County, and Payte, resident of Tarrant County.

The main attack appellants make on the Commissioner's order is that the Commissioner acted without authority in distinguishing between the two applicants on the basis of statutory standards of public need and profitable operation. Appellants argue that the controlling difference between the applicants is the preference to local control. It is uncontradicted that the Granbury charter, if granted, would be controlled locally, by residents of Hood County, and that none of the Stephenville association directors resides in Hood County and less than ten percent of the association's stock is held by residents of Hood County.

■ Review of the action of the Commissioner must be based on facts found in the records made at the hearings before the Commissioner in 1969, and if there is substantial evidence supporting the order of the Commissioner, the judgment exercised by him in his discretion must stand. Gerst v. Nixon, 411 S.W.2d 350 (Tex. Sup.Ct., 1966); Phillips v. Brazosport Savings and Loan Association, 366 S.W.2d 929 (Tex.Sup.Ct., 1963).

The Commissioner had no difficulty in finding that both the Stephenville branch applicant and the Granbury charter applicant complied with the several basic requirements for the respective types of applications. We hold that these findings of the Commissioner are supported by substantial evidence. Such findings of the Commissioner are not challenged, and are not in issue, except as we shall indicate hereafter.

The group seeking the Granbury charter proposed to serve Hood and Somervell Counties, and the Stephenville branch applicant specified Hood County as its proposed service area. The Commissioner concluded from the evidence adduced at the two hearings, that Hood County would be "the logical and practical service area" for either proposed operation, but noted that there would not be a sufficient volume of business in Hood County alone, or in the area of Hood and Somervell combined, to indicate a profitable operation for the proposed charter association.

■ It is settled that the same basic standards governing the approval or disapproval of an application for a saving and loan charter are applicable to the granting or denying of proposals for branch offices. Southwestern Savings and Loan Association of Houston v. Falkner, 160 Tex. 417, 331 S.W.2d 917; Benson v. San Antonio Savings Association, 374 S.W.2d 423 (Tex.Sup.Ct., 1963); Gerst v. Jefferson County Savings and Loan Association, 390 S.W.2d 318 (Tex.Civ.App., Austin, 1965, writ ref., n. r. e.).

The Commissioner found that a public need existed for the proposed branch of Stephenville Savings and Loan and that the branch could operate profitably. The Commissioner also found that no public need existed for the proposed new association and that the volume of business in the community was not sufficient to indicate a profitable operation for the proposed new association. The Granbury charter group attacks these findings and argues that no basis exists for so differentiating between the charter applicant and the branch applicant.

■ An applicant for a charter is required to show a public need for the proposed association. Art. 852a, sec. 2.08(3), Vernon's Ann.Civ.Sts. The applicant for a branch office must show a public need for the branch the association proposes to operate. Rules and Regulations, sec. 2.4(h). The public need to be shown by the respective applicants of necessity must be related to the specific proposals made in each application, the first for a complete new association and the other for a branch office to be operated by an existing association. Proof of public need for a branch office obviously need not be as comprehensive as proof of public need for a new association engaged, at one location, in a full savings and loan service.

■ In like manner, proof that a profitable operation is indicated for a new association is, by the very nature of the operation, different from the proof needed to show that a branch office will be profitable for an association. The charter applicant, by statute, is required to prove that the volume of business in the community where the association will carry on its business "is such as to indicate profitable operation." Art. 852a, sec. 2.08(3). In seeking a branch office, the applicant must demonstrate that the volume of business in the community where the branch will operate "is such as to indicate a profitable operation to the association within a reasonable time." Rules and Regulations, sec. 2.4(h).

■ We have concluded that the Rules, in prescribing a standard for branch offices that is less exacting than the standard set by statute for association charters, are in harmony with the general objectives of the savings and loan Act and within the discretion of the Building and Loan Section of the Finance Commission. Gerst v.

Oak Cliff Savings and Loan Association, 432 S.W.2d 702 (Tex.Sup.Ct., 1968).

Testimony before the Commissioner supports the view that branch offices may be operated with considerably less expense than home offices. Branch offices were shown to reach the "break even" point sooner than home offices because of the obvious and inherent differences in expense for the two types of offices. Because a branch office can be operated with greater economy than the home office of an association, the business available in some communities may justify a branch operation but not warrant a new institution rendering complete service and having a more onerous expense load. Furthermore, a branch office, operating ancillary to the home office, can be profitable to the association if it has savings that can be used elsewhere in loans made by the institution.

Granbury, the county seat of Hood County, is the largest community in the county and in 1967 had a population estimated at less than 2,400. Hood County has experienced a slow growth in population. In eighteen years the county's population increased less than 400, from fewer than 5,300 persons in 1950 to about 5,700 in 1968. The neighboring county of Somervell, mentioned by the Granbury charter group as part of its proposed service area, had a population in 1968 of about 2,900. The combined population of the two counties at the time of the hearings was about 8,600.

In 1967 the per household effective buying income in Hood County was under $6,150, with a total effective buying income of about $11,700,000. Fifty-seven percent of the households in Hood County had an effective buying income in 1967 of less than $5,000.

Granbury began in September, 1966, issuing building permits, after which seven permits were issued in 1967, eleven in 1968, and, at the time of the charter hearing be-fore the Commissioner in 1969, Granbury had that year issued only five permits.

The Commissioner found, and the finding is supported in the record, that prospects for future growth in Hood County are "based largely upon the proximity of Granbury to metropolitan Fort Worth and on the residential development contemplated near the soon-to-be-completed De Cordova Bend Reservoir." The Commissioner found that although "Granbury is favorably situated to serve to some degree whatever development does occur on this lake," only a few houses had been built in the various planned or platted subdivisions near the lake.

From his experience with numerous applications based largely upon expected residential development around newly-built lakes, the Commissioner in his opinion found "that the effect of such development is often greatly exaggerated and * * * often does not reach predicted proportions," although the development has an importance to the near-by community with respect to the development to be expected near Granbury, the Commissioner stated that it was his " * * * opinion that a great portion of the residential development on this lake will be of two types. Much of the residential development occurring as a result of the lake project will be primary homes for residents who work and do their primary shopping in some other city and, particularly, in Forth Worth. Such persons are not likely to support a local facility with their savings to the same extent as those who are truly integral members of the community * * * who work, shop, and reside in the community."

The Commissioner further found: "Many persons who have their primary residences in other cities will build recreational and week-end residences. These second homes are not as desirable a source of loans for a savings and loan association —and particularly a new one—as are primary residences. Moreover, the rate and degree of residential development which

will result from the completion of the lake are speculative and problematical under the evidence  *  *  *"

The record discloses, as found by the Commissioner, that, "As of January 31, 1969, Stephenville Savings and Loan Association had accumulated savings accounts with a total outstanding balance in excess of $800,000 from the residents of Hood County and had outstanding in the county mortgage loans with total balances in excess of $1,100,000." The Commissioner found that "adequate savings to support a new charter association are not available in the county but that, with its existing business in the area, there will be an adequate amount of new savings available to make the branch office of Stephenville Savings and Loan  *  *  *  in Granbury  *  *  *  a profitable operation."

The Commissioner found "that the budgets presented by both the charter applicant and the branch applicant unintentionally over-estimate by a large margin the savings available in the area." Based on the testimony of the charter applicant's expert witness, the Commissioner found that "the annual savings flow in both Hood and Somervell Counties available to all savings and loan associations doing business in the area is not in excess of $420,000." It was clear, as observed by the Commissioner, that the charter applicant could not expect to garner all of that fund in view of existing competition.

In promulgating his order, the Commissioner did not find it necessary to compare the branch application and the charter application on the basis of merit with respect to statutory standards, since the Commissioner concluded that the charter applicant failed to meet the requirement of showing probability of a profitable operation. The Commissioner noted, however, that "the branch office can better serve the needs of the area than could the charter applicant because of the experience of its management and because of its position as a well-established association with a significant existing volume of business in the area."

■ The charter group contends that under section 2.14 of the Savings and Loan Act (Article 852a) the Commissioner should have given preference to the Granbury group because of the local control of the proposed association. The statute provides that in instances where an application for a branch office, by an existing association with its home office in another county, is competing with a charter group from the community proposed to be served, the Commissioner may give preference to the local group. In this case the applications ceased to be competing when the Commissioner found that the charter applicant failed to show public need and probability of profitable operation for the type of operation proposed.

The Commissioner found that the applicant for the branch office had shown a public need and that the branch would prove profitable to the Stephenville association. The provisions of section 2.14, allowing the Commissioner to give preference to a local charter group over an application for a branch office, is not applicable if one of the applicants fails to show a public need and probability of profitable operation for its proposed operation.

■ The Granbury group contends that the Stephenville association failed to show that the proposed branch office would have qualified full-time management. Section 1.11 of the Rules and Regulations for Savings and Loan Associations is limited by its terms to qualifications of management for new associations and is not applicable to managers for branch offices so as to require "three (3) years active experience in real estate mortgage lending."

Proof was made before the Commissioner that the manager proposed to be placed at the branch office had been employed by the Stephenville association six years and

prior to that time had been employed for two to three years by two banks; that the manager had been an officer of the association since February, 1968, had taken loan applications from customers for several years, and owned stock in the institution. The president of the Stephenville institution testified that loan applications taken by the branch office would be approved only at the home office and the manager of the branch would be under supervision and direction of the head of the home office.

We overrule appellants' points as to qualification of the branch manager.

█ The Granbury group, under points four and five, urges that the Commissioner was not authorized to consider the Stephenville application because the application was verified only to the best of the affiant's "knowledge and belief" and not "sworn to under * * * oath" as prescribed by section 2.01(4) of Article 852a, V.A.T.S. The terms of this section expressly apply to charter applications. Branch office applications are not mentioned. The Supreme Court has held, in a case under similar circumstances that, where the question of bad faith or fraud was not raised, failure to follow the strict injunction of the statute as to an application for charter would not render invalid a charter granted pursuant to the application. Phillips v. Brazosport Savings and Loan Association, 366 S.W.2d 929 (Tex.Sup.Ct., 1963). The accuracy of the data contained in the application for the branch office is not questioned for fraud or bad faith but only because it was not "sworn to under the sanction of an oath." We overrule these points and decline to reverse the cause, as appellants urge, upon this ground.

The Commissioner refused to issue subpoenas, requested by the Granbury group, to require attendance of two witnesses at the branch office hearing, the ground of refusal being that the Commissioner had no authority to compel witnesses to attend and testify. Appellants have preserved this claimed error under their final point.

The Granbury group sought to compel attendance of the husband of the agent for the Stephenville association, who operated its agency in Granbury, in order to elicit information as to supervision of the agency. Later at the hearing appellants sought to compel attendance of the proposed manager of the branch office in order to question him regarding his qualifications. Appellants contend they have been denied due process by reason of the Commissioner's refusal to require attendance of the two witnesses.

█ We have found no provision by statute or rule, and none has been pointed out by the parties, empowering the Commissioner to compel the attendance of witnesses at hearings in connection with branch applications. We are unwilling to hold that the Commissioner has such authority by implication. Appellants argue that absence of compulsory process denies them the fair hearing required by due process of law and, because adequate procedure is lacking in the statute, the applicable article is unconstitutional. In some instances due process may require compulsory attendance of witnesses at administrative hearings, but not in all such proceedings. The purpose of a hearing on an application for a branch office is to provide an informed basis upon which the Commissioner may exercise the power vested in him to grant or deny the application.

█ Appellants were at the hearing in opposition to the application of Stephenville Savings and Loan to place a branch office in Granbury. Appellants, the Granbury charter group, have not indicated clearly how the absence of the two witnesses prejudiced their rights, consisting in the main of a fair hearing on their own application for a new association in Granbury. As observed by a federal court, " * * * it [has not] been made clear by judicial decision what constitutes due proc-

ess in the way of administrative hearing." National Broadcasting Company v. Federal Communications Commission, 76 U.S.App. D.C. 238, 132 F.2d 545 (1942), affirmed 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374. The court continued: "Presumably this will vary to a considerable extent with the nature of the substantive right, the character and complexity of the issues, the kinds of evidence and factual material, the particular body or official, and the administrative functions involved in the hearing." 132 F.2d 560, col. 2.

Under the facts of the case before us we conclude that appellants were not denied due process, and the points of error on this matter are overruled.

All points of error brought by appellants have been considered and all points are overruled.

The judgment of the trial court is affirmed.

Affirmed.

SHANNON, J., not sitting.