W. Sale **LEWIS,** Savings and Loan Commissioner, et al., Petitioners,

v.

**GONZALES COUNTY SAVINGS AND LOAN ASSOCIATION et al.,** Respondents.

No. B–2536.

Supreme Court of Texas.

Dec. 8, 1971.

Rehearing Denied Jan. 19, 1972.

Crawford C. Martin, Atty. Gen., Heath, Davis & McCalla, Dudley D. McCalla, Austin, Fly, Cory & Moeller, Victoria, for petitioner.

James E. Cross, Yoakum, Jacobsen & Long, Joe R. Long and Gary Evatt, Austin, for respondent.

DENTON, Justice.

This is a suit by Gonzales County Savings and Loan Association and Yoakum Federal Savings and Loan Association to set aside an order of the Savings and Loan Commissioner granting the application of South Texas Savings and Loan Association of Victoria to establish a branch office in Hallettsville, Texas. The trial court upheld the commissioner's order and its judgment was reversed and the cause remanded to the commissioner for further proceedings by the court of civil appeals. 461 S.W.2d 215. We affirm the judgment of the court of civil appeals.

Since the court of civil appeals in Bay City Federal Savings and Loan Association v. Lewis, 463 S.W.2d 268, seemed to have placed a different construction upon Sec. 11.11(4), Article 852a, Vernon's Tex.Ann.

Civ.Stat., and its application upon the commissioner's orders we granted writs of error in both cases. After having heard argument in both cases and considered the briefs of the parties, the Court has reached the conclusion the two decisions are in conflict. Bay City involved an order of the Savings and Loan Commissioner granting a new charter application as authorized by Sec. 2.08 of Article 852a, V.A.C.S. The case at bar has to do with the commissioner's order granting an application to establish a branch office of an existing savings and loan association under the provisions of Sec. 2.4 of Rules and Regulations for Savings and Loan Associations. South Texas Savings and Loan Association of Victoria and the Savings and Loan Commissioner are petitioners here.

The respondents contend here, as in the court of civil appeals, that the order granting the application to establish the branch office was invalid on two grounds: (1) the order did not contain a concise and explicit statement of the underlying facts supporting the findings in the order as required by Art. 852a, § 11.11(4) Vernon's Tex.Ann.Civ.Stat., and (2) the order was not supported by substantial evidence. The court of civil appeals sustained respondents' first contention and held the order invalid, but did not pass on the contention that the order was not supported by substantial evidence.

The Rules and Regulations for Savings and Loan Associations governing branch offices are set forth below.[1] The respondents do not challenge the validity of the rules promulgated by the commissioner, nor do they question the fact the commissioner made all findings required by the rules. The contention is the order is invalid for the reason it does not contain a "concise and explicit" statement of the underlying facts supporting the findings.[2] In

---

1. "2.4. The Commissioner shall approve an application for a branch office if he shall have affirmatively found from the data furnished with the application, the evidence adduced at the hearing and his official records that:

   (a) the aggregate amount of the loss reserves, surplus and Permanent Reserve Fund stock, if any, of the applying association is equal to three per cent (3%) of its savings liability;

   (b) the applying association has had a profitable operation for the three year period next preceding the filing of such application after paying operating expense, making statutory allocations to loss reserves and paying dividends on savings accounts out of its earnings during such period;

   (c) the applying association has had no serious supervisory problems which would affect its ability to properly operate such office;

   (d) the proposed operation will not unduly harm any other association operating in the vicinity of the proposed location;

   (e) a separate enclosed office area will be provided (such enclosure may be by counters or railings of less than ceiling height);

   (f) the proposed location of the additional office is within the same county or is within the same standard metropolitan statistical area (as defined by the United States Bureau of Census) as the principal or home office of the applying association except in cases where it appears that the proposed additional office is to be in a different county or standard metropolitan statistical area, as the case may be, from that in which the principal or home office of the applying association is located, and there is no other association, either State or Federal, adequately serving the community in which such additional office is to be located;

   (g) the proposed branch office will be supervised by qualified full time management;

   (h) there is a public need for the proposed branch office and the volume of business in the community in which the proposed branch office will conduct its business is such as to indicate a profitable operation to the association within a reasonable period of time."

2. "Art. 852a, Sec. 11.11(4): A decision or order adverse to a party who has appeared and participated in a hearing shall be in writing and shall include findings of fact and conclusions of law, separately stated, on all issues material to the decision reached. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings."

the instant order the findings which are said not to comply with the statutory requirement read:

"The Commissioner further finds the following: that the aggregate amount of the loss reserves, surplus and Permanent Reserve Fund stock of the applying association is equal to at least three per cent (3%) of its savings liabilities; that the applying association has had a profitable operation for the three-year period next preceding the filing of such application after paying operating expense, making statutory allocations to loss reserves and paying dividends on savings accounts out of its earnings during such period; that the applying association has had no serious supervisory problems which would affect its ability to properly operate such office; . . . that the proposed branch office will be supervised by qualified full-time management; and that the character, responsibility, and general fitness of the management of the branch applicant are such as to command confidence and warrant belief that the business of the proposed branch office will be honestly and efficiently conducted in accordance with the intent and purpose of the Savings and Loan Act."

■ The findings which are attacked include those required by (a), (b), (c) and (g) of Rule 2.4, dealing with the amount of loss, reserves, surplus and permanent reserve fund stock to equal 3% of its savings liability; that the applying association has had a profitable operation for the preceding three-year period; that the applying association has had no serious supervisory problems; and the proposed branch office will be supervised by qualified full-time management. The same attack is also made on the commissioner's findings, that the character, responsibility and general fitness of the applicant are such as to command confidence and warrant belief that the business of the proposed branch office will be honestly and efficiently conducted in accordance with the intent of the Sav-

ings and Loan Act. Those rules were promulgated by the Savings and Loan Commissioner to establish standards to govern the establishment of branch offices by existing associations. The authority to promulgate these rules and regulations has been upheld. Gibraltar Savings & Loan Association v. Falkner, 371 S.W.2d 548 (Tex.Sup.1963). It is settled that the same basic standards governing applications for a savings and loan charter are applicable to proposals for branch offices. Southwestern Savings and Loan Ass'n of Houston v. Falkner, 160 Tex. 417, 331 S.W.2d 917; Benson v. San Antonio Savings and Loan Ass'n, 374 S.W.2d 423 (Tex.Sup. 1963). However, it has been held proof of public need for a branch office obviously need not be as comprehensive as proof of public need for a new association engaged, at one location, in a full savings and loan service. In like manner, proof that a profitable operation is indicated for a new association is, by the very nature of the operation, different from the proof needed to show that a branch office will be profitable for an association. Strain v. Lewis, 461 S.W.2d 498 (Tex.Civ.App., Writ Ref'd N.R.E.). The Rules in prescribing a standard for branch offices that is less exacting than the standard set by statute for association charters, are in harmony with the general objectives of the Savings and Loan Act. Gerst v. Oak Cliff Savings and Loan Assoc., 432 S.W.2d 702 (Tex.Sup. 1968). Rule 2.4 requires the commissioner to affirmatively find compliance with each requirement as prerequisite to approval of an application for an additional office. Gibraltar v. Falkner, supra. As noted above, Rule 2.4 provides: "The Commissioner shall approve an application for a branch office if he shall have affirmatively found from the data furnished with the application, the evidence adduced at the hearing and his official records that. . ." [Followed by eight requirements.] The respondents do not contend the commissioner failed to make every finding required by subparagraphs (a) through (h) of Sec. 2.4 of the Rules and Regulations.

They do contend the order granting the application to establish a branch office must comply with the requirement of Sec. 11.11(4), Art. 852a; i. e., " . . . Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." We are of the view this requirement applies only to findings of fact in the commissioner's orders which are "set forth in statutory language." [3] When findings are made in the language of the Rules and Regulations that do not embody statutory language, they need not be accompanied by a concise and explicit statement of the underlying facts.

The instant order contained all eight findings required by Rule 2.4 in addition to the finding concerning the "character, responsibility, and general fitness" of the management of the branch office which is a required finding for the approval of a charter by Art. 852a, Sec. 2.08(2).

■ Four of the commissioner's findings are set forth in statutory language. They include Rule 2.4(d) that the proposed operation will not "unduly harm any other association" operating in the vicinity; Rule 2.4(g) requiring supervision of the proposed branch by "qualified full-time management;" Rule 2.4(h) that "there is a public need" for the proposed branch and the volume of business in the proposed community is such as to indicate a profitable operation;" and Art. 852a, Sec. 2.08(2) concerning the "character, responsibility, and general fitness" of the management of

the branch applicant. Under the clear language of Art. 11.11(4) these findings, being set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings. The commissioner's order contains no statement of underlying facts to support these required findings.

The remaining findings are in the language of the Rules and Regulations rather than the statutes. These findings are largely of a factual nature capable of precise, objective measurement. They include and carry with them the supporting underlying facts. These underlying facts either exist or they do not. There is no real need for findings of this nature to be supported by a more concise statement of the underlying facts. These factual matters can be readily measured against the record by reference to a financial statement or a few lines of testimony. On the other hand, the Rules and Regulations contemplate a number of findings be expressed in statutory language. These findings require discretion or judgment on the part of the commissioner that are based on a multitude of factors. These are the findings which must be accompanied by concise and explicit statements of the underlying supporting facts. There being no statement of the underlying facts supporting the findings in statutory language, the order is not sufficient.

Although the respondents primarily rely on the contention that the order of the commissioner granting the application of South Texas Savings and Loan to establish a branch office was invalid for the reason

---

3. "2.08. Approval of Application for Charter. The Commissioner shall not approve any charter application unless he shall have affirmatively found from the data furnished with the application, the evidence adduced at such hearing and his official records that:
"  *  *  *
"(2) the character, responsibility and general fitness of the persons named in the Articles of incorporation are such as to command confidence and warrant belief that the business of the proposed association will be honestly and efficiently con-

ducted in accordance with the intent and purpose of this Act and that the proposed association will have qualified fulltime management;
"(3) there is a public need for the proposed association and the volume of business in the community in which the proposed association will conduct its business is such as to indicate profitable operation;
"(4) the operation of the proposed association will not unduly harm any existing association."

it did not contain a concise and explicit statement of the underlying facts supporting the findings, they also have counterpoints of error contending that the holding of the court of civil appeals is correct because there was not substantial evidence to support the commissioner's order.

■ We will be governed by the substantial evidence rule; that is, if there is substantial evidence in the record supporting the findings, the order must stand, even though the commissioner might have decided differently from what the reviewing court may have decided. Gerst v. Goldsbury, 434 S.W.2d 665 (Tex.Sup.1968); Gerst v. Oak Cliff Savings & Loan Association, 432 S.W.2d 702 (Tex.Sup.1968).

The proposed branch office is to be located in Hallettsville, the county seat of Lavaca County. Hallettsville had a population of about 2900 in 1968, while that of Lavaca County was 20,000. There are no savings and loan facilities located in Lavaca County. The nearest facilities are the Yoakum Federal in DeWitt County, 18 miles from Hallettsville; in Gonzales, Gonzales County, 33 miles away; and in Edna, approximately 45 miles from Hallettsville. The home office of South Texas Savings in Victoria, the applicant here, is some 45 miles from Hallettsville. There are two banks located in Hallettsville. One accepts only time deposits. Both banks do purchase Treasury bills for their customers when requested.

Testimony offered by South Texas included evidence that deed of trust recordings in Lavaca County totaled $3,498,000 in 1966; $3,490,000 in 1967 and $3,348,000 in 1968. Some eleven different savings and loan associations had recorded loans in Lavaca County at the time of the hearing. Loans made by individuals in this same three-year period amounted to over one million dollars each year. South Texas Savings and Loan Association from its home office in Victoria had approximately $800,000 in savings from Lavaca County, and a loan balance of $150,000 from that county at the time of the hearing.

Mr. Claude Talley, Chairman of the Department of Economics of Victoria College testified for petitioner association. Mr. Talley conducted a survey of the individual income and total income of Lavaca County and the surrounding counties of Gonzales, DeWitt and Jackson; the nature of the work force, and the status and potential of the financial institutions of those counties. He noted the slow growth of the two Hallettsville banks, and the more rapid growth of the banks in surrounding counties. Savings deposits of the banks in Gonzales, DeWitt and Jackson Counties range from 40.9% to 56.7% of the demand deposits of such banks, while the comparable percentage for the Lavaca County banks was 9.7%. Each of these three adjoining counties have at least one savings and loan association. The effective buying income of Lavaca County exceeded by approximately $5,000,000 that income of Gonzales and Jackson Counties in 1967 and was some $1,500,000 less than that of DeWitt County. Mr. Talley's survey showed this effective buying income increased by over $11,500,000 in Lavaca County from 1961–1967, a greater increase than occurred in any of the other three counties. Mr. Talley concluded it was his opinion there was a definite need for a savings and loan facility in Hallettsville; and that the area was not adequately served from a savings and loan standpoint.

Respondents offered rather extensive evidence in opposition to the application. The thrust of this evidence, presented largely by officials of competing savings and loan associations in adjoining counties and local bank officials, is to the effect Lavaca County's economy has been sluggish; the work force has had a gradual decline; and that existing lending agencies adequately serve this area.

■ While there is evidence to the contrary, we believe that there is substantial evidence in the record to support the commissioner's order granting South Texas' application to establish the branch office.

The judgment of the court of civil appeals is affirmed, and the cause is remanded to the commissioner for further proceedings consistent with this opinion.

Concurring opinion by POPE, J., in which CALVERT, C. J., and STEAKLEY, J., join.

POPE, Justice (concurring).

I concur in the judgment for a remand of this cause. I believe, however, that we should not consider respondents' substantial evidence counterpoints at this time. The commissioner has not yet made the findings of underlying facts required by Art. 852a, § 11.11(4), Vernon's Tex.Civ.Stats. Upon preparing such statement, he may find that the facts will not support his present order. I would not decide that the order is supported by substantial evidence until we have a valid order before us.

CALVERT, C. J., and STEAKLEY, J., join in this concurring opinion.