**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF NEW BRAUNFELS et al., Appellants,**

v.

**W. Sale LEWIS, Savings and Loan Commissioner of Texas, et al., Appellees.**

**No. 12705.**

Court of Civil Appeals of Texas, Austin.

Jan. 18, 1978.

Rehearing Denied Feb. 8, 1978.

James W. Hackney, McGinnis, Lochridge & Kilgore, Austin, for First Federal Savings and Loan Ass'n of New Braunfels.

Larry Temple, Austin, for New Braunfels Savings and Loan Ass'n and Guada-Coma Savings and Loan Ass'n.

John L. Hill, Atty. Gen., Catherine Brown, Asst. Atty. Gen., Austin, for W. Sale Lewis, Savings and Loan Commissioner of Texas.

Gary Evatt, Long, Evatt & Webber, Austin, for San Antonio Savings Ass'n.

PHILLIPS, Chief Justice.

Without reaching the substantial evidence question and related issue urged by the parties [1] hereto, the trial court set aside the Savings and Loan Commissioner's order granting a branch office in New Braunfels to San Antonio Savings Association. The court set aside the order on two specific grounds; namely, the exclusion from evidence of extracts from a private publication and related testimony, and the alleged failure of San Antonio Savings Association to prove that the particular location for which the branch office was approved is available to the association.

The trial court remanded the matter to the Commissioner with instructions to admit and consider the excluded evidence, to take additional evidence with regard to the precise location of the branch office, and to conduct such other proceedings as are not inconsistent with the judgment.

We reverse the judgment of the trial court and herewith render judgment validating the Commissioner's order.

This suit was brought in the court below by First Federal Savings and Loan Association of New Braunfels, New Braunfels Savings and Loan Association, and Guada-Coma Savings and Loan Association, against W. Sale Lewis, Savings and Loan Commissioner of Texas, seeking judicial review of an order entered by the Savings and Loan Commissioner which granted San Antonio Savings Association permission to establish a loan branch office at the southeast corner of the intersection of Landa Street and Highway 46 in New Braunfels, Comal County, Texas.

San Antonio Savings Association intervened in the suit as a party defendant and aligned itself with the Savings and Loan Commissioner. The New Braunfels group, the plaintiffs below, contended that the order of the Commissioner was not reasonably supported by substantial evidence and that the order and the findings therein failed to comply with the requirements of Section 2.08 and 11.11(4) of the Texas Savings and Loan Act, the requirements of 2.3 and 2.4 of the Rules and Regulations for Savings and Loan Associations and Section 16 of the Administrative Procedure and Texas Register Act.

In the alternative, it was alleged that the hearing officer erred in refusing to permit into evidence certain valid, dependable, reliable and otherwise admissible evidence and testimony pertaining to the profitability of

---

1. The parties hereto appear before us both as appellants and as appellees.

the banks in the area and that the Commissioner erred in approving the branch application for the precise site on the southeast corner of the intersection of Landa Street and Highway 46 in New Braunfels, because the evidence discloses that San Antonio Savings Association did not own the site but owned another and different site.

The case was tried before the court in February, 1977, and the following June the court entered a judgment remanding the case to the Savings and Loan Commissioner for the taking of additional evidence concerning the admission of hereinafter described evidence pertinent to the area banks and also to determine the question of availability of the site in question. The court did not pass upon the substantial evidence question nor the issues concerning the statutory propriety of the order itself.

All of the parties hereto now bring this appeal from that judgment.

## I.

Appellant San Antonio Savings Association's first point of error is that of the trial court in holding that San Antonio Savings Association failed to prove at the administrative hearing that the site within New Braunfels for which the Commissioner approved the branch office, the southeast corner of Landa Street and State Highway 46, was available to the association and that the administrative hearing should be reopened to take additional evidence with respect to the location.

We sustain this point.

■ W. W. McAllister, III, the president and chief operating officer of branch office applicant San Antonio Savings Association, testified that the proposed location of the branch office is the southeast corner of the intersection of Landa Street and State Highway 46 in New Braunfels. Mr. McAllister further testified that he personally assisted in selection of the site, and that the association had owned it for several years.

However, an economist appearing on behalf of the protesting associations testified that, in his opinion, the site owned by San Antonio Savings Association is at the south or southwest corner of the above-described intersection.

The Commissioner accepted Mr. McAllister's description of the location as being the correct one; however, he noted in his order that it would have made no difference in his decision if the site was the southwest corner of the intersection.

There is no question but that San Antonio Savings owns one or the other corner of the intersection, and that it is available for the location of the branch office. It is also without dispute that the precise location of the branch is not pertinent to the decision of this case. Rule 2.3 of the Rules and Regulations for Savings and Loan Associations requires that an application for a branch office "shall state the proposed location thereof." We hold that under the facts of this case, there is substantial evidence to uphold the Commissioner's finding with respect to the proposed location.

Appellant San Antonio Savings' second point is the error of the trial court in holding that the Commissioner's hearing officer erroneously excluded from evidence extracts from a publication termed *Sheshunoff Banks of Texas,* relating to the alleged profitability of certain banks, and the related testimony of the witness concerning the contents of the extracts; and further, the error of the trial court in holding that this exclusion of evidence prejudiced substantial rights of the complaining parties.

We also sustain this point.

■ After lengthy direct and *voir dire* examination, the hearing officer sustained the branch office applicant's objection to two pages of paper marked "Opponent's Exhibit 4" and the related testimony of the consultant, Dr. George Berry, who appeared on behalf of the protesting associations.

Dr. Berry identified this exhibit as a two-page extract from a private publication entitled *Sheshunoff Banks of Texas.* These two pages purportedly reflect the profitability of two of the four banks in Comal County. The essence of Dr. Berry's excluded testimony is that the *Sheshunoff* extract

proves that these two banks did not operate profitably in 1975.

We hold that the exclusion of this evidence and testimony relative thereto was proper.

The new Administrative Procedure and Texas Register Act, Section 14(a) directs that the rules of evidence as applied in nonjury civil cases in the district courts of this state shall be followed in agency hearings. This exhibit and any testimony of Dr. Berry's relating to the contents of the exhibit are hearsay; that is, information compiled by others outside the hearing offered for the truth of the matters stated without the compilers and computerizers testifying under oath, subject to cross-examination. 1 McCormick and Ray, *Texas Evidence*, sec. 781 (1956, 1975 Supp.). Nor does this evidence contain any of the redeeming features necessary to admit scholarly treatises as exceptions to the hearsay rule.

*Sheshunoff* is a private firm which claims to be specializing in "banking information and studies." There is a question as to whether *Sheshunoff* is a disinterested witness in the data the firm publishes as the publication itself states that their communication is not an offer to sell or the solicitation of an offer to buy the securities mentioned as the company, its officers, directors and employees "may have an interest in one or more of the securities mentioned."

Nevertheless, Dr. Berry made no inquiry of the publisher and simply was not sure of the source of information used by *Sheshunoff* in the publication. The publication itself says only that the data are "extracted from individual reports of condition" without specifying where the reports are obtained and whether they are official reports of the condition of the banks. The data consist of computer print-outs the accuracy for which *Sheshunoff* itself disclaims responsibility. In addition, the computer work is apparently not done by *Sheshunoff* but by a third party for whose work the publication refuses to vouch. In short, we are not quite sure where the *Sheshunoff* reports came from. So due to the obscurity of the origin of the source material, admission of the data would have denied adverse parties a realistic opportunity to rebut it and, needless to say, any cross-examination of those familiar with the sources of the material would have been impossible.

Thus, we hold that the examiner did not abuse his discretion in excluding the evidence which, in his judgment, did not qualify as "substantial." In this regard, see *Lewis v. Metropolitan Savings and Loan Ass'n*, 550 S.W.2d 11 (Tex.1977). The qualitative difference between the evidence excluded here and that excluded in *Metropolitan* is patent. Indeed, this evidence would, in all probability, have been excluded under the *aegis* of *Lewis v. Southmore Savings Ass'n*, 480 S.W.2d 180 (Tex.1972), which even though handed down before the adoption of the Administrative Procedure and Texas Register Act, restated the law as being:

"In Texas the hearsay rule applies in administrative hearings just as it does in court. And it is a rule that forbids the reception of evidence rather than one that merely goes to the weight of the evidence."

Should we be in error with respect to our holding on the hearsay question, in our judgment the error is harmless under this record. Section 19(e) of Article 6252–13a of the Act *inter alia* requires the court to reverse and remand the case to the administrative agency "if substantial rights of the appellant have been prejudiced" because of the administrative findings. The *Sheshunoff* reports were offered for the limited purpose of showing that the Canyon Lake Bank at Sattler and the New Braunfels National Bank both lost money in the year 1975. The former was opened for business in 1973, the latter in 1975. The findings of fact and conclusions of law found by the Commissioner based on his statement of the underlying facts encompass a much broader time frame of reference with respect to the economic growth and the economic vitality of the trade area concerned. Consequently, as our precis of the record, hereinafter set out, will disclose evidence of the loss of revenue by these two institutions during

this limited period of time involved could not have prejudiced their "substantial rights" and to so hold would be both unrealistic and unreasonable.

## II.

The remaining questions before us concern whether the order viewing the record as a whole is supported by substantial evidence and whether the Savings and Loan Commissioner set forth in the order a concise and explicit statement of underlying facts supporting his ultimate findings and separately stated findings of fact and conclusions of law in conformity with the requirements of Section 11.11(4) of the Texas Savings and Loan Act and Section 16 of the Administrative Procedure and Texas Register Act.

■ As we stated above, the trial court did not reach those questions; however, since we have a valid order[2] before us and since they are questions of law,[3] we will dispose of them here.

Section 2.08 of the Texas Savings and Loan Act requires the Commissioner to affirmatively find, *inter alia*, a public need, a sufficient volume of business in the community in which the association will conduct its business to indicate a profitable operation, and that no undue harm will be visited upon any existing association. These requirements for a new charter have been held to be applicable to a branch application also.[4] Rules 2.3 and 2.4 of the Rules and Regulations for Savings and Loan Associations set forth the same requirements as those stated above, for branch office applications. Both Section 11.11 of the Savings and Loan Act and Section 16 of the Administrative Procedure and Texas Register Act require that the order contain findings of fact and conclusions of law separately stated and that the findings of fact set forth in statutory language be accompanied by a concise and explicit statement of underlying facts supporting the findings.

■ The decision and order of the Commissioner is valid if supported by substantial evidence. In determining the substantial evidence issues, the basic inquiry of the reviewing court is whether reasonable minds could have, upon the basis of the evidence before the Commissioner, reached the same conclusions or have made the same findings as those found by the Commissioner.[5]

The evidentiary review of the court is based upon evidence adduced at the administrative hearing and contained in the hearing record certified to the reviewing court by the Commissioner.[6]

Substantial evidence has been described by the courts in all the hues of Jacob's coat; however, most recently the Supreme Court[7] stated: "In practical result, it has not taken much evidence under our decisions to qualify as substantial. In fact, the evidence may be substantial and yet greatly preponderate the other way."

In *Strain v. Lewis, supra,* a case involving a branch office application, this Court held that the proof of public need for a branch office need not be as comprehensive as proof of public need for a new association; that Section 2.4(h) of the Rules explicitly and deliberately prescribes for branch offices a standard of profitable operation less exacting than the corresponding standard

---

2. *Lewis v. Gonzales Savings and Loan Ass'n,* 474 S.W.2d 453, 459 (Tex.1971); *Bay City Federal Savings and Loan Ass'n v. Lewis,* 474 S.W.2d 459, 462–63 (Tex.1971).

3. *Gerst v. Nixon,* 411 S.W.2d 350 (Tex.1967); *Board of Adjustment v. Underwood,* 332 S.W.2d 583 (Tex.Civ.App.1960, writ ref'd n. r. e.); *Fuller v. Mitchell,* 269 S.W.2d 517 (Tex.Civ. App.1954, writ ref'd n. r. e.).

4. *Strain v. Lewis,* 461 S.W.2d 498 (Tex.Civ. App.1970, writ ref'd n. r. e.).

5. *Gerst v. Goldsbury,* 434 S.W.2d 665 (Tex. 1968); *Gerst v. Guardian Savings and Loan Ass'n,* 434 S.W.2d 113 (Tex.1968); *Gerst v. Nixon,* 411 S.W.2d 350 (Tex.1966).

6. *Gerst v. Nixon, supra.*

7. *Lewis v. Metropolitan Savings and Loan Ass'n, supra.*

prescribed by the statute for new associations; and, that the criterion for profitable operation prescribed by Section 2.4(h) of the Rules represents a valid and permissible exercise of the rule-making authority of the Savings and Loan Section of the Finance Commission.

■ Finally, the Commissioner is the sole judge of the credibility of the witnesses and of the weight to be afforded their testimony;[8] and, he is not bound to accept the conclusions and opinions of any witness.[9]

■ In turning to the Commissioner's order, we find that it contains all required underlying findings in accordance with the statutory provisions discussed above. The most important being those related to the standards of public need, profitable operation and absence of undue harm to other associations. We also hold that the Commissioner made the required findings of fact and conclusions of law based upon the underlying facts and that all of these requirements are contained in the order now before us.

The findings in the Commissioner's order were adduced from evidence in the record that the San Antonio Standard Metropolitan Statistical Area, which consists of Comal (New Braunfels), Bexar and Guadalupe Counties, has shown significant economic and population growth in the current decade and that personal income has increased substantially. The evidence in the record further disclosed that this statistical area was so designated by the United States Department of Commerce because of the economic interaction and relationship between and among these counties. The evidence then discloses significant population increase in the city of New Braunfels and the same for Comal County. There is evidence that the growth of the economy of New Braunfels and Comal County in recent years is reflected in various specific economic data such as passenger vehicle registrations, residential postal deliveries, total retail sales, sales tax receipts, bank debits for the banks in New Braunfels, growth in the labor force, building permits, and personal income reflected through reports of the United States Department of Commerce.

The evidence further discloses that there are four commercial banks located in Comal County, three in New Braunfels, and one in Sattler. These banks have enjoyed substantial growth; that between the years 1970–1975 total deposits of the banks in New Braunfels increased from approximately $28,500,000 to approximately $51,800,000. Total deposits of the bank in Sattler approximated $2,200,000 in 1974, $3,800,000 in 1975 and $4,100,000 in 1976. Total time and savings deposits of individuals, partnerships, and corporations in the bank located in New Braunfels grew from approximately $10,300,000 in 1972 to approximately $18,100,000 in 1975.

There are two savings and loan associations domiciled in Comal County: First Federal and New Braunfels Savings and Loan Association. The home offices of both associations are located in New Braunfels and one maintains a branch office in Sattler. There is a savings and loan association, Guada-Coma, recently opened for business in Seguin, Guadalupe County, which is in the San Antonio Standard Metropolitan Statistical area; however, the Commissioner found that the proposed branch office will have little or no effect on the operation of this Seguin-based association.

The evidence further reflects that First Federal, established in 1934, doubled its savings between 1970 and 1975, increasing from $32,800,000 to approximately $72,200,000 in total assets and from $28,600,000 to approximately $62,500,000 in savings. Aggregate net income for 1973–1975 exceeded $1,800,000. Mortgage loans and other liens on real estate increased from approximately $52,000,000 in 1973 to approximately $61,500,000 in 1975.

8. *Gerst v. Guardian Savings and Loan Ass'n, supra.*

9. *Citizens of Texas Savings and Loan Ass'n v. Lewis,* 483 S.W.2d 359 (Tex.Civ.App.1972, writ ref'd n. r. e.).

New Braunfels Savings and Loan Association opened for business in August of 1975. By the end of 1975, the association had accumulated total assets of approximately $2,266,000, total savings of approximately $1,574,000, and total first mortgage loans of approximately $1,616,000. By June 1976, total savings of the association had increased to a total of more than $4,000,000. As of May 1976, New Braunfels Savings had total assets of approximately $4,174,-000, mortgage loans of approximately $3,595,000, and total capital, surplus and reserves of approximately $618,000. This association experienced a small net loss from operations in 1975, but operated at a small profit for the first five months of 1976. The record reflects that this association has performed well since opening for business.

The record further reflects that branch applicant San Antonio Savings Association has a number of existing patrons and a considerable volume of business outstanding in Comal County. The proposed branch office will permit applicant to render better service to its existing customers and to attract new customers. As of May 1976, San Antonio Savings Association had, from customers with mailing addresses in the ZIP code for New Braunfels post office, savings accounts with aggregate balances of more than $2,600,000 and mortgage loans with outstanding balances in excess of $1,600,-000.

In the budget for the first three years of operation of the proposed branch office, San Antonio Savings projects a net savings inflow for the office of $1,000,000 the first year, $1,500,000 the second year, and $2,000,000 the third year. The budget projects lending 93 percent of the savings flow each year and making other investments with 7 percent of such funds. Based upon income and expenses which will be generated by the volume of business, its financial vice president testified that the proposed branch office will become profitable to applicant during the second year of operation and will be profitable overall for the first three years of operation.

Dr. James E. Stafford, a qualified economic consultant, appearing as an expert witness on behalf of applicant, testified that in his opinion, it is probable that the proposed branch office will be able to achieve the volume of savings and loan business projected in the budget during its first three years of operation and that three years is a reasonable time for a branch office to become profitable to an association.

The Commissioner found, and so stated in his order, that the approximate volume of business projected in the budget is likely to be obtained by the proposed branch office, and that the income and expense projections for this volume of business, contained in the branch office budget, are reasonable and that the proposed branch office will become a profitable operation to the applying association within a reasonable period of time.

The Commissioner further found that to the extent, if any, sufficient loans to absorb the volume of savings obtained through the branch office are not available in the community, applicant branch office will be able to lend such funds in other areas and thus render the proposed branch office a profitable operation.

The Commissioner further found that the proposed branch office of San Antonio Savings will afford the public in Comal County an additional needed competitive alternative, which will operate profitably without unduly harming any existing association. The Commissioner adopted the findings of Dr. Stafford, based on testimony in the record, that there is a public need for the proposed branch office; that the volume of business in the community in which the proposed branch office will conduct its business is such as to indicate a profitable operation to applicant within a reasonable period of time; and that the proposed operation of the branch office will not unduly harm any other association operating in the vicinity of the proposed location. These findings in the order are adequate statements of the required underlying facts.

The Commissioner then found, based on the stated underlying facts, and as the statutes require, set out ultimate findings or conclusions that the proposed branch office will be in the public interest, that there is a substantial and obvious community need for the proposed branch office, that the proposed branch office will be able to obtain the business necessary to render the branch office a profitable operation to the applicant within a reasonable period of time, that existing associations in the community will be able because of the volume of business available to continue their growth, profitable operation and service to the public, and that the proposed branch office will not unduly harm any existing association.

In addition, ultimate findings based on the stated underlying facts were made with respect to location of the branch office, loss reserves, supervision of the branch and as to the character, responsibility and general fitness of the management and directorate of the applying association.

The protestants before the Commissioner complain that the Commissioner did not consider the entire record but only selected portions of the evidence without taking into account the retractions and admissions of the witnesses who appeared. Protestants point to a conflict in the testimony of applicant's witness as to the geographical center of the trade territory thus rendering the trade territory to be served by the proposed branch as being too broad and all inclusive. They object to the manner and the data with which Dr. Stafford projected the expected population of Comal County by the end of 1977. They object to the evidence of passenger vehicle registrations, residential mail deliveries, sales tax receipts, as being irrelevant or, in some cases, misleading. They point to falling retail sales in Comal County in 1974, a diminution in bank debits in 1974 showing a weakness of business activity, the small growth of total labor and proprietor's income for 1974, and the fact that cash receipts from farm marketings were down more than two million dollars from 1973. These protestants further contend that there is evidence showing that in 1972, there were $5.5 million in new building permits issued, that by 1975, when the number of savings and loan associations had doubled, the value of the permits had fallen to $2.9 million. They complain that these facts, along with testimony to the effect that the three local banks showed a loss in IPC[10] demand deposits during the first quarter of 1976 and only a modest gain in time and savings deposits, demonstrate a falling business climate in the area and a general lack of loan demand. Protestants also complain that the Commissioner did not include this evidence in his order.

Nevertheless, we hold that the order of the Commissioner was based on substantial evidence under cases cited above and, further, that the order complied with the pertinent statutes cited above and with the Commissioner's own rules and regulations.

In our opinion, reasonable minds could well have differed on the quality or "substantiality" of the evidence presented before the Commissioner and, in fact, even if protestants' evidence was such as it would have upheld a denial of the branch charter, it is the Commissioner's prerogative to make this choice, he did so, and we affirm his conclusion.

The judgment of the trial court is reversed and judgment is here rendered validating the order of the Savings and Loan Commissioner.

SHANNON, Justice, dissenting.

The district court entered judgment remanding the cause to the Commissioner with instructions: (1) that evidence be taken as to the particular location of the proposed branch office, and (2) that evidence excluded by the hearing officer, concerning profitability of area banks, be admitted. The judgment expressly states that the issues concerning substantial evidence were neither reached nor decided.

This Court held recently that the district court, upon determination of error in an administrative appeal, may remand a cause

10. Demand deposits of individuals, partnerships, and corporations.

to the Savings and Loan Commissioner for further consideration even though the Court did not pass on the substantial evidence questions. *First Savings & Loan Ass'n of Del Rio, Tex. v. Lewis,* 512 S.W.2d 62 (Tex.Civ.App.1974, writ ref'd n. r. e.); cf. *Lewis v. Metropolitan Savings & Loan Ass'n,* 550 S.W.2d 11, 16 (Tex.1977). Accordingly, the district court, in the case at bar, was empowered to order remand.

The only question for resolution by this Court, then, is whether or not the district court was correct in determining error in the Commissioner's order in that (1) the particular location of the branch office was not proved, and (2) the hearing officer erred in excluding a publication, Sheshunoff, *Banks of Texas,* which demonstrated the profitability, or not, of area banks. The majority of this Court has concluded that the district court erred in both determinations.

In my view, the district court was correct in remanding the cause to the Commissioner for the admission of the publication into the record.

In the agency hearing, both the branch applicant and the opponents introduced evidence reflecting the condition of the local economy in an effort to show public need, especially the condition of the financial community. The applicant naturally emphasized that the banking community was financially strong. By way of rebuttal and through their economic expert, George William Berry, the opponents attempted to place into the record evidence regarding the lack of profitability of two new banks in Comal County. The tendered evidence consisted of two pages from a publication entitled, Sheshunoff, *Banks of Texas.* The hearing officer sustained counsel's objection to the tender of the publication.

From the direct and *voir dire* examination of Dr. Berry and his testimony on bill of exceptions, it was shown that Sheshunoff, *Banks of Texas* is a published reference source usually and customarily relied upon by banking experts. Dr. Berry testified that the publication was dependable and reliable. Dr. Berry had used the publi-

cation in the past and, in fact, the publication had been admitted into the record in a previous charter, or branch proceeding, before the Commissioner. The publication was consulted by Dr. Berry in the preparation of the economic study which he prepared for the instant case. The publication was brought to the hearing room and made available to the applicant's counsel and representatives.

The preceding paragraph demonstrates that the opponents met the requirements of *Lewis v. Southmore Savings Association,* 480 S.W.2d 180 (Tex.1972), and that the evidence, under the authority of that case, was admissible.

The importance of the excluded evidence was shown by Dr. Berry's testimony on bill of exception. Dr. Berry testified that the publication showed that the two new banks in Comal County were operating at a net loss. The fact that two new financial institutions were operating at a loss in Comal County bears, of course, on the issue of public need for the proposed branch. The excluded evidence was material and relevant to the issue of public need, and without that evidence the Commissioner was unable to discharge his responsibility to consider all the surrounding facts and circumstances. *Metropolitan Savings & Loan Ass'n v. Lewis,* 550 S.W.2d 11 (Tex.1977). The district court was, therefore, correct in remanding the matter to the Commissioner for him to reopen the hearing and to reconsider his decision in light of the previously excluded evidence. *Metropolitan Savings & Loan Ass'n v. Lewis, supra.*

The majority opinion is also wrong for a different reason. In its opinion, the majority determines that the Commissioner's findings of public need, sufficient volume of business, and no undue harm, are supported by substantial evidence. The district court's judgment, which we review, does not pass on those questions. In deciding the substantial evidence questions, regardless of the contents of the judgment under review, the majority of this Court turns a blind eye to precedent and misconceives the function of an appellate court.

Texas Rev.Civ.Stat.Ann. art. 852a § 11.12 (1964) vests in the district court of Travis County the authority to review the orders of the Commissioner. After hearing, the district court, of course, may affirm the order or, as in the case at bar, remand the matter to the Commissioner for further proceedings. Tex.Rev.Civ.Stat.Ann. art. 852a § 11.12(6). A party dissatisfied with the judgment of the district court may take an appeal in the manner provided for in civil actions generally. Tex.Rev.Civ.Stat. Ann. art. 852a § 11.12(7).

It is not the order of the Commissioner, but instead it is the *judgment of the district court* which this Court reviews for error. An appellate court may reverse the judgment of the lower court only for error in the judgment. *Chevalier v. Lane's, Inc.,* 147 Tex. 106, 213 S.W.2d 530 (1948). It follows that " . . . no matter can be passed upon in review that was not previously passed upon below, for there can be no error without an adjudication." Sunderland, *The Problem of Appellate Review,* 5 Texas L.Rev. 126, 140 (1927). The rule is hardly novel, for in 1816 Chancellor Kent observed, "The very theory and constitution of a court of appellate jurisdiction . . . is the correction of errors which a court below may have committed; and a court below cannot be said to have committed an error when their judgment was never called into exercise, and the point of law was never taken into consideration." *Gelston v. Hoyt,* 13 Johns. 561 (N.Y.1816); accord, *Smith v. Texas Co.,* 53 S.W.2d 774, 779 (Tex.Com.App.1932); *Wade v. Galveston, H. & S. A. Ry. Co.,* 110 S.W. 84 (Tex.Civ. App.1908, writ ref'd); *Van Hoose v. Moore,* 441 S.W.2d 597, 619 (Tex.Civ.App.1969, writ ref'd n. r. e.). The majority opinion has not stated any reason or referred to any authority in point that alters the rule in an appeal involving an administrative order.

In the case at bar, the judgment of the district court did not reach, nor determine, the substantial evidence questions and, as a result, there was not, and could not be, error in the judgment with respect to those issues.

The majority opinion is faulty for yet another reason. Appellate courts are empowered to reverse judgments only to correct errors. *Chevalier v. Lane's, Inc., supra.* Because there could be no error in the lower court's judgment with respect to the substantial evidence questions, the part of the majority opinion dealing with those questions is advisory only. Article V of the Constitution of Texas does not authorize this Court, or any other court, to render advisory opinions. *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641 (1933); *United Services Life Insurance Company v. Delaney,* 396 S.W.2d 855 (Tex.1965); *Firemen's Insurance Company of Newark, New Jersey v. Burch,* 442 S.W.2d 331 (Tex.1968); *State Bar v. Van Slyke,* 557 S.W.2d 363 (Tex.Civ. App.1977, no writ).

I would affirm the judgment of the district court.